**Eric Lee HERNANDEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–95–002–CR.**

Court of Appeals of Texas,
Waco.

Jan. 10, 1996.

Hoagie L. Karels, Waco, for appellant.

John W. Segrest, Criminal District Attorney, Mark E. Parker, Asst. District Attorney, Beth Toben, Asst. District Attorney, for appellee.

Before THOMAS, C.J., and VANCE and CUMMINGS, JJ.

## OPINION

VANCE, Justice.

Eric Lee Hernandez was charged by indictment with the felony offenses of murder and injury to a child. TEX. PENAL CODE ANN. §§ 19.02, 22.04 (Vernon 1994). He pled not guilty to the indictment, and a jury found him guilty of both offenses. The jury assessed punishment at sixty-five years in prison for murder and life in prison for injury to a child. He appeals on three points. We will affirm the judgment.

The victim of Hernandez's offenses was the seventeen-month-old daughter of Berlinda Cantu. The victim died on September 6, 1993, from acute peritonitis, a traumatic tear or perforation of the small bowel. According to the medical examiner, this was caused by a blunt-force trauma to the child's abdominal area approximately forty-eight hours prior to her death.

Prior to September 6, Hernandez had been living with Cantu and two of her children for about two or three months. According to Cantu, she had an argument with Hernandez on September 5. She alleged that during this argument, Hernandez "punched" her daughter, the victim, in the stomach with his fist. The victim died the next day in a babysitter's care.

## EXTRANEOUS OFFENSES

In point one, Hernandez argues that the court erred by allowing the "repeated injection" of testimony regarding extraneous offenses during the guilt-innocence phase of his trial. Specifically, Hernandez complains about four separate instances when the court admitted testimony from Cantu describing extraneous offenses: 1) testimony that Hernandez "pulled [a] knife" during an argument with Cantu; 2) testimony regarding the number of times Hernandez hit the victim; 3) testimony that Hernandez hit the victim in the stomach approximately two weeks prior to the charged offense; and 4) testimony from Cantu that Hernandez would "go after [her] family" if he ever found out that she talked to police. He argues that the admission of these extraneous offenses allowed the jury to convict him for "being a criminal generally," thus depriving him of a fair trial and denying him due process of law.

The State counters that Hernandez has improperly joined four separate allegations, thereby making point one multifarious. Normally, when multiple legal theories are presented in a single point, it is multifarious and presents nothing for appellate review. *Thomas v. State*, 723 S.W.2d 696, 697 n. 2 (Tex.Crim.App.1986). However, because we can distinguish Hernandez's contentions from one another, we will discuss them individually in the interest of justice.

### THE KNIFE

First, we consider the extraneous-offense testimony regarding the knife. Cantu testified that during her argument with Hernandez on September 5, he pulled a knife and threatened her with it. When the State was asking her to clarify exactly when he pulled the knife during the argument, Cantu offered the following testimony:

> [STATE]: Did anything else happen with [Victim] during the time that you were arguing?
>
> [CANTU]: He hit her. He punched her and hit her a couple of times on her back and her side and her arms.
>
> [STATE]: When was that? Before he pulled the knife on you or after?

[CANTU]: After he pulled out the knife. Well, he did it constantly.

[DEFENSE]: I am going to object, Judge. That's irrelevant.

THE COURT: Sustained.

[DEFENSE]: Ask the jury be instructed—

THE COURT: Instruct the jury to disregard the last statement for any purpose.

■ Hernandez complains that the phrase "he did it constantly" referred to an extraneous offense. Because he failed to obtain an adverse ruling, we find that Hernandez failed to preserve his complaint for appellate review. The trial court must rule adversely or there is nothing to complain about on appeal. *Turner v. State,* 805 S.W.2d 423, 431–32 (Tex.Crim.App.), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). If an objection is sustained and a curative instruction is given, a party must obtain an adverse ruling on a motion for mistrial before any error can occur. *Fuller v. State,* 827 S.W.2d 919, 926 (Tex.Crim.App.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993).

PRIOR PUNCHES

We consider next the extraneous-offense testimony regarding the number of times Hernandez hit the victim. During cross-examination, Cantu offered the following testimony:

[DEFENSE]: He hit her one time when she was right there; is that right?

[CANTU]: Right. That's what I am trying to say. He hit her once that day, and twice before that.

[DEFENSE]: No ma'am. I am not talking about any time before. And, Your Honor, I would move—I would request that—

THE COURT: Sustained. And I instruct the jury to disregard the last statement for any purpose.

[DEFENSE]: We move for a mistrial.

THE COURT: Overruled.

Hernandez complains that Cantu's testimony that he hit the victim "twice before that" referred to an extraneous offense. The State

contends that Hernandez failed to preserve the complaint because he did not state the specific grounds for his objection. We find that the grounds for his objection were apparent from the context and will address the merits of his complaint. *See Dunn v. State,* 819 S.W.2d 510, 524–25 (Tex.Crim.App.1991), *cert. denied,* 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 63 (1992).

■ The State also argues that the testimony presents no error because it is not clear that the testimony referred to an inadmissible extraneous offense. Where evidence of several crimes are intermixed or connected so that they form an indivisible criminal transaction, and it is impractical to narrate the events of one without describing the events of the others, then such extraneous-offense evidence is admissible as "same transaction contextual evidence." *Mayes v. State,* 816 S.W.2d 79, 86–87 (Tex.Crim.App. 1991); *see also Lockhart v. State,* 847 S.W.2d 568, 572–73 (Tex.Crim.App.1992), *cert. denied,* — U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993).

Prior to the testimony in question, on direct-examination, Cantu testified that on September 5, Hernandez "punched [the victim] and hit her a couple of times on her back and her side and her arms." The State argues that evidence of these hits is same-transaction contextual evidence to the primary offense of punching the victim in the stomach. In other words, the State argues that the blows to the victim's arms, sides, and back on September 5 are so intermixed and connected with the blow to the victim's stomach on September 5 that they form an indivisible criminal transaction, and it is impractical to tell about one without telling about the other. The State explains that Cantu's testimony that Hernandez had "hit [the victim] twice before" could have referred to the fact that he hit the victim on her back, side, and arms.

While we agree that evidence that Hernandez "punched [the victim] and hit her a couple of times on her back and her side and her arms" may be same-transaction contextual evidence to the primary offense of punching the victim in the stomach, we do not agree that the testimony Hernandez complains of,

that he "hit [the victim] twice before," referred to the punches on the victim's back, side, and arms. The testimony in question is that Hernandez "hit her *once that day,* and twice before that." (Emphasis added). When read in context, the "twice before" language refers to hits that occurred *prior* to "that day," or prior to September 5. Thus, Cantu's testimony that Hernandez hit the victim several times on September 5 on or about her arms, sides, and back could not be what she was referring to when she said "twice before that." It appears that she was attempting to testify about punches the victim received *prior* to September 5 that were not part of an indivisible criminal transaction and were not same-transaction contextual evidence. The statement was non-responsive to the question asked. The court sustained an objection to it, so no error occurred at that point.

⬛ The State also argues that since the court instructed the jury to disregard the testimony in question, any harm was cured. *Kelley v. State,* 677 S.W.2d 34, 36 (Tex.Crim. App.1984). We agree. The harm in admitting improper testimony is cured by an instruction to the jury to disregard, except in extreme cases where it appears that the evidence is clearly calculated to "inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds." *Id.* Considering the non-specific nature of the testimony in question, other previously admitted testimony that Hernandez hit the victim "a couple of times on her back and her side and her arms," and other evidence of his guilt, we find that the court's action in instructing the jury to disregard Cantu's testimony cured any harm that might otherwise have resulted. Thus, the court did not err when it overruled the motion for a mistrial.

ANOTHER PRIOR PUNCH

We consider next the admissibility of extraneous-offense testimony that Hernandez hit the victim in the stomach approximately two weeks prior to the charged offense. Prior to the State's redirect examination of Can-

tu, the prosecutor indicated to the court that she felt entitled to ask the witness about an incident prior to September 5 in which Hernandez allegedly hit the victim in the stomach. The court then heard the testimony outside the presence and hearing of the jury. After entertaining argument as to its admissibility, the court allowed the admission of the following testimony into evidence:

[PROSECUTOR]: Okay. Berlinda, I think yesterday when we were on cross-examination you said several times that you were confused, that's why you were having a hard time keeping the events straight between how many times he hit her, the order, whether he hit her before or after he pulled the knife on you and whether he put her on the bed or on the couch. Do you remember saying that you were confused?

[CANTU]: Yes, ma'am.

[PROSECUTOR]: Would you like to explain to the jury why you were confused?

. . .

[CANTU]: I'm confused because so many times that he hit her, and it was twice that he punched her in the stomach.

[PROSECUTOR]: You said he punched her in the stomach one other time; is that correct?

[CANTU]: Yes, ma'am.

[PROSECUTOR]: When was that? Do you remember?

[CANTU]: In the late twenties of August.

[PROSECUTOR]: August of 1993?

[CANTU]: Yes ma'am.

Hernandez asserts that the court erred in admitting the above testimony because it was an irrelevant extraneous offense used to try him "as a criminal generally." *See* TEX. R.CRIM.EVID. 404(b). He objected to the testimony under Rules of Criminal Evidence 401, 402, 403, and 404(b).[1] *Id.* 401, 402, 403, 404(b). The State argued that the evidence was properly admitted for three reasons: 1) to clarify confusion and to explain Cantu's answers during cross-examination; 2) be-

---

1. Hernandez's Rule 404(b) "notice" objection for the extraneous offense at issue is addressed sepa-
rately in a later section of the opinion, entitled, "Improper Notice." TEX.R.CRIM.EVID. 404(b).

cause it was admissible under section 19.06 of the Penal Code; and 3) because it was admissible under Rule 404(b) to rebut the defensive theory of accident or mistake. *See* Act effective September 1, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen.Laws 474, 475, *repealed by* Act effective September 1, 1994, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614 (current version at TEX.CODE CRIM.PROC.ANN. art. 38.36 (Vernon Supp.1995)); *Id.* The court ruled that the testimony was "admissible under 19.06 as circumstances surrounding the alleged offense." The court also found that Cantu's testimony about the prior stomach punch was "more probative than prejudicial" because the defense "brought out" the incident to show a conflict in Cantu's testimony. The court reasoned: "I think she is entitled to explain why she was confused, if she was." We find no error in the court's action.

Evidence of extraneous offenses or bad acts that a defendant may have committed normally cannot be introduced at the guilt-innocence phase to show that the defendant acted in conformity with his criminal nature and therefore committed the crime for which he is on trial. TEX.R.CRIM.EVID. 404(b); *Lockhart,* 847 S.W.2d at 570; *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex.Crim.App. 1990) (on rehearing). However, since this was a murder case, evidence of extraneous offenses may have been admissible under article 19.06 of the Penal Code to show "all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." Act effective September 1, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen. Laws 474, 475 (repealed 1994) (current version at TEX.CODE CRIM.PROC.ANN. art. 38.36).

According to the Court of Criminal Appeals, section 19.06 "in no way broadens or otherwise affects the rules of evidence which apply, or the *way* in which they apply in any given homicide case." *Fielder v. State,* 756 S.W.2d 309, 318 (Tex.Crim.App.1988) (citing *Werner v. State,* 711 S.W.2d 639, 646 (Tex. Crim.App.1986)) (emphasis in original). The Rules of Criminal Evidence provide a two-step test to determine the admissibility of an extraneous offense. *See* TEX.R.CRIM.EVID. 403, 404(b). First, evidence of the extraneous offense may be admissible if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Id.* 404(b); *Montgomery,* 810 S.W.2d at 387. Second, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM.EVID. 403; *Montgomery,* 810 S.W.2d at 387.

Accordingly, before a court can properly admit evidence of an extraneous offense under section 19.06, it must first find the evidence relevant to a material issue other than the defendant's character. Act effective September 1, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen.Laws 474, 475 (repealed 1994) (current version at TEX.CODE CRIM.PROC.ANN. art. 38.36); TEX.R.CRIM.EVID. 404(b). The material issues in a homicide case are determined by the theories of the prosecution and the defense. *See Fielder,* 756 S.W.2d at 318. Collateral facts which do not logically tend to prove or disprove material issues are not admissible under Section 19.06. *See id.*

In Count I of the indictment, Hernandez was accused of *intentionally* causing the death of the victim by committing an act clearly dangerous to human life while intending to cause serious bodily injury. In Count II, he was accused of *intentionally* engaging in conduct that caused serious bodily injury to the victim. Hernandez's theory of the case was that he accidentally injured the victim by improperly performing the Heimlich maneuver on her to dislodge a piece of food caught in her throat.

Thus, the issue of Hernandez's intent; *i.e.,* whether he had a conscious objective or desire to cause serious bodily injury to the victim, was a material issue throughout the trial. Having identified a material issue, we now examine whether evidence that Hernandez hit the victim in the stomach approximately two weeks prior to her death is relevant to that issue. In reviewing the court's determination that the evidence was

relevant, we must uphold the ruling absent an abuse of discretion. *Montgomery*, 810 S.W.2d at 390–91. As long as the court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *Id.* at 391.

█ Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.CRIM.EVID. 401. Evidence that Hernandez hit the victim in the stomach before September 5 tends to make it more probable that it was his conscious objective or desire to cause serious bodily injury to the victim. Further, it tends to rebut the defensive theory that he injured the victim by accident or mistake while performing the Heimlich maneuver on her. *Montgomery*, 810 S.W.2d at 388 (extraneous offenses are admissible to rebut a defensive theory). Accordingly, we hold that the admitted evidence is relevant to a material issue other than Hernandez's character; *i.e.*, his intent.

█ We next address the second prong of the test to determine the admissibility of an extraneous offense: whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM.EVID. 403. Rule 403 favors the admissibility of relevant evidence, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389. In reviewing the court's decision whether to exclude evidence under Rule 403, once again, we must uphold the ruling absent a clear abuse of discretion. *Id.* at 391–92. We will measure the court's ruling against the criteria by which a Rule 403 decision is to be made, but will not conduct a *de novo* review of the record with a view to making a wholly independent judgment. *Id.* at 392. As long as the court's ruling was at least within the zone of reasonable disagreement, we will not intercede. *Id.* at 391.

█ Evidence that Hernandez hit the victim in the stomach during an argument two weeks before her death is identical to the action implicated by the charged offenses. The extraneous offense occurred about two weeks before the charged offenses and reflects an ongoing course of violent conduct toward the victim. Since the victim is dead, Cantu is the witness closest to the actual events who could most accurately recall the relationship between Hernandez and the victim. Without this evidence regarding Hernandez's prior conduct toward the victim, the jury would have been left with a void regarding the prior relationship. Accordingly, the extraneous offense would have been probative in determining Hernandez's intent on September 5. Though some prejudice to Hernandez is apparent, as it is with the use of all extraneous offenses, the probative value of the evidence greatly outweighs any prejudicial effect. Considering the above analysis, we hold that the court properly overruled the objections to evidence of the extraneous offense.

THREATS TO THE WITNESS'S FAMILY

Finally, we consider the extraneous-offense testimony concerning a threat to Cantu's family. On redirect-examination, Cantu testified that when she went to the police department to talk with a detective, she was afraid to tell the truth because "if [Hernandez] found out, he would go after my family." Hernandez complains that the testimony was inadmissible because it referred to an extraneous offense. The State contends that Hernandez waived any objection he may have had to the testimony because the same testimony had been admitted into evidence earlier without objection.

█ "[I]t is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered." *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App.1984). During direct-examination, Cantu offered the following testimony:

[PROSECUTOR]: [D]id you and the defendant talk about what had caused [the Victim] to die?

[CANTU]: Yes ma'am. We did at my cousin's.

[PROSECUTOR]: And what did he say or what did you say to each other?

[CANTU]: I told him I knew it was because of that, and he told me to not to mention it to anybody because if I turned him in, he would kill my family before they got ahold of him, or he would get someone to do it.

Hernandez did not object to this testimony, and could not validly object to any subsequent questions concerning a threat to Cantu's family. Thus, the court did not err in admitting Cantu's testimony that "if [Hernandez] found out, he would go after my family."

Hernandez's multifarious arguments, even when considered individually, are without merit. Point one is overruled.

### IMPROPER NOTICE

In point two, Hernandez additionally complains that the court erred by admitting one of the extraneous offenses, *i.e.*, that he hit the victim in the stomach approximately two weeks prior to the charged offenses, despite the fact that the State did not give timely notice of its intent to use the offense. He argues that this deprived him of a fair trial and violated his right to effective assistance of counsel as guaranteed by the Texas and United States constitutions. In response, the State contends that the argument was not preserved for appellate review because it is multifarious in that it fails to distinguish between the Texas and United States constitutions. Since we do not find that the lack of distinction between the constitutions in point two presents multiple legal theories, we will address the point on its merits. *See Thomas,* 723 S.W.2d at 697 n. 2.

■ Rule 404(b) provides:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible ... provided, *upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evi-*dence other than that arising in the same transaction.

Tex.R.Crim.Evid. 404(b) (emphasis added). On December 21, 1993, Hernandez filed a "Request for Notice of Other Crimes, Wrongs or Acts." On Friday, October 14, 1994, at 2:50 p.m., three days before the trial began on Monday, the State responded by filing the "State's Motion to Introduce Extraneous Offenses in its Case–in–Chief." Hernandez complains that such a response cannot be considered *reasonable* notice in advance of trial, given the timeliness of his request some ten months earlier.

The State counters with four arguments. First, that notice was timely as given. As emphasized above, Rule 404(b) calls for *reasonable notice* in advance of trial. *Id.* Although we find no cases addressing the meaning of "reasonable notice" under Rule 404(b), the purpose behind the rule is to "adequately apprise the defendant of the extraneous offenses the State intends to introduce at trial." *Self v. State,* 860 S.W.2d 261, 264 (Tex.App.—Fort Worth 1993, pet. ref'd). In other words, the purpose is to allow the defendant adequate time to prepare for the State's introduction of the extraneous offenses at trial. *See id.* We do not believe that a 404(b) response filed on a Friday afternoon is adequate or reasonable notice for a trial beginning the following Monday morning.

■ Second, the State argues that, because it allowed "open-file discovery," notice was sufficient. The Court of Criminal Appeal's recent decision in *Buchanan v. State* rejects this argument:

We cannot conclude that the mere opening of its file ... satisfies the requirement of giving notice "of intent to introduce" such evidence. The mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an "intent to introduce" such evidence in its case in chief.

*Buchanan v. State,* 911 S.W.2d 11, 15 (Tex. Crim.App.1995). Third, the State argues that, because the extraneous-offense evidence was admissible under section 19.06 of the Penal Code and section 19.06 has no notice provision, notice was not required.

*See* Act effective September 1, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen.Laws 474, 475 (repealed 1994) (current version at TEX.CODE CRIM.PROC.ANN. art. 38.36). The Court of Criminal Appeals has, however, held that section 19.06 "in no way broadens or otherwise affects the rules of evidence which apply, or the *way* in which they apply in any given homicide case." *Fielder,* 756 S.W.2d at 318 (emphasis in original). Thus, the notice requirement of Rule 404(b) is applicable. TEX.R.CRIM.EVID. 404(b).

▮▮ Finally, the State argues that the extraneous-offense testimony is a form of rebuttal evidence, and that Rule 404(b)'s notice requirement is not applicable to rebuttal evidence. *See id.* Even though the testimony in question was offered during the State's re-direct examination of Cantu in the State's case-in-chief, the State urges us to treat the testimony as rebuttal evidence. The State opines in its brief: "Where Appellant has opened the door to otherwise inadmissible evidence through cross-examination, how could the State be aware that the situation would arise so as to be able to prepare a pretrial notice?"

First, the State's own motion shows that it *was* aware of the situation and had *already* attempted to provide the requisite pretrial notice of the event. Cantu gave a statement to police on October 5, 1993, describing the extraneous offense in question. The State has argued that this statement was available to the defense over a year before trial through open-file discovery. Obviously, it was also available to the State. Further, in the untimely "State's Motion to Introduce Extraneous Offenses in its Case-in-Chief," the State lists the *same* extraneous offense that is in question: "On an occasion during the last weeks of August, 1993, Defendant hit or punched [the victim] on or about the stomach during a fight with Berlinda Cantu."

Second, Rule 404(b) plainly requires that the State give reasonable notice "in advance of trial of intent to introduce *in the State's case in chief* such evidence other than that arising in the same transaction." *Id.* (emphasis added). The literal text of the rule demonstrates the fair objective meaning of the rule—that it applies during the State's

case-in-chief. *See Hernandez v. State,* 861 S.W.2d 908, 909 (Tex.Crim.App.1993). The Code of Criminal Procedure dictates the order of proceeding in a trial:

4. The testimony on the part of the State shall be offered.

5. The nature of the defenses relied upon and the facts expected to be proved in their support shall be stated by defendant's counsel.

6. The testimony on the part of the defendant shall be offered.

7. *Rebutting testimony may be offered on the part of each party.*

TEX.CODE CRIM.PROC.ANN. art. 36.01 (Vernon Supp.1995) (emphasis added). Plainly, the State cannot introduce "rebutting testimony" during its case-in-chief because the defendant has yet to introduce any evidence for it to rebut. Because the court overruled Hernandez's objections that the State failed to give timely notice, we sustain point two.

### HARM ANALYSIS

▮▮ Having found error, we must determine if the error contributed to the conviction or punishment. TEX.R.APP.P. 81(b)(2). This analysis involves tracing the impact of the error. We focus on the error and its effect on the process whereby the jurors apply law to facts to reach a verdict, rather than on the result. *Harris v. State,* 790 S.W.2d 568, 588 (Tex.Crim.App.1989). We examine whether the trial was essentially a fair one. *Id.* If the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming the overall evidence might have been, then the conviction is tainted. *Id.* The procedure is: isolate the error and all its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Id.* In isolating the error and its effects, we consider the source of the error, the nature of the error, whether and to what extent it was emphasized by the State, its probable collateral implications, and other considerations suggested by the facts of the case. *Id.* at 587. In determining whether a rational trier of fact might have reached a different conclusion, we consider how much weight a

juror would probably place upon the error and its probable impact on the jury in light of the existence of the other evidence. *Id.* Where the error was induced by action of the prosecution, we must determine whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.*

■ We are obligated to examine the record in a neutral, impartial, and even-handed manner, not in the light most favorable to the verdict, focusing not on the outcome nor the weight of the other evidence but on whether the error might have prejudiced the jurors' decision-making process. *Griffin v. State,* 815 S.W.2d 576, 580 (Tex.Crim.App.1991); Tex.R.App.P. 81(b)(2).

■ We begin our analysis by isolating the error and all its effects.[2]

## THE SOURCE AND NATURE OF THE ERROR

The nature of the error in question is the court's admission of the following testimony without proper notice:

[PROSECUTOR]: Okay. Berlinda, I think yesterday when we were on cross-examination you said several times that you were confused, that's why you were having a hard time keeping the events straight between how many times he hit her, the order, whether he hit her before or after he pulled the knife on you and whether he put her on the bed or on the couch. Do you remember saying that you were confused?

[CANTU]: Yes, ma'am.

[PROSECUTOR]: Would you like to explain to the jury why you were confused?

. . .

[CANTU]: I'm confused because so many times that he hit her, and it was twice that he punched her in the stomach.

[PROSECUTOR]: You said he punched her in the stomach one other time; is that correct?

[CANTU]: Yes, ma'am.

[PROSECUTOR]: When was that? Do you remember?

[CANTU]: In the late twenties of August.

[PROSECUTOR]: August of 1993?

[CANTU]: Yes ma'am.

The source of the error is the State's offer of the testimony as evidence. However, it does not appear that the State flagrantly or consciously attempted to taint the trial with improper argument or hidden evidence. *See Johnson v. State,* 803 S.W.2d 272, 283 (Tex. Crim.App.1990); *Orona v. State,* 791 S.W.2d 125, 130 (Tex.Crim.App.1990). The State erroneously believed that it was not required to provide notice under article 19.06 of the Code of Criminal Procedure, and argued erroneously in the alternative that it effectively gave Hernandez notice of the extraneous offense by virtue of its "open file policy." *See* Act effective September 1, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex.Gen.Laws 474, 475 (repealed 1994) (current version at Tex.Code Crim.Proc.Ann. art. 38.36). In addition, the record reveals that the State's primary motive for introducing the extraneous-offense evidence was to clarify some confusion in Cantu's testimony brought out during cross-examination. Thus, we conclude that the State offered the testimony in good faith.

## EMPHASIS ON THE ERROR BY THE STATE

The State made the following references to the extraneous-offense testimony during its closing argument in the guilt-innocence phase of the trial:

Let's go through identity. The first question I think you have to decide when you get back there is did this defendant cause these bruises, the four bruises around [the victim's] naval that caused that tear in her small intestine.

Berlinda told you he did. She said he hit her hard enough to cause her feet to fly off the floor. She may not have had the facts particularly in specific order. She didn't have a script.

But what did she tell you? She is not smart. She only went to the ninth grade. And it all happened during an argument in

---

**2.** We limit our review to evidence that Hernandez hit the victim in the stomach approximately two weeks prior to the charged offenses because that is the only extraneous offense to which Hernandez objected on notice grounds.

her house. *And it wasn't the first time that he hit [the victim] in the stomach. He had done it in that apartment a few weeks earlier.*

. . . . .

So then I think you come down to the third scenario, and it's the scenario that Berlinda told you. That on Sunday the 5th after arguing with [Berlinda] in the morning about whether or not she wanted to cook, *having hit [the victim] before a few weeks earlier when they were living there,* and then arguing with [Berlinda] in [the victim's] room later in the day about whether or not [Berlinda] paid enough attention to [the victim's brother], and whether or not she paid more attention to the kids than him, and they are fighting and they were pulling back and forth on the [victim]. Remember, she said he was hitting on [the victim] while she was holding her, and he caused a black eye and hit [the victim] in the head, and then they faught, [sic] and they pulled on her arms and they used her as a shield back and forth, and he said, "You spend more time with [the victim] than with [the victim's brother], and I would rather see [the victim] dead in the middle of the street than [the victim's brother]." That's the person, that's the context. That's whose actions and whose words you are going to look at to judge what his intent was.

(Emphasis added). Although the State argued the extraneous offense in an effort to convince the jury that Hernandez hit the victim in the stomach on September 5, 1993, it also offered other substantial evidence of his guilt. Throughout twenty-five pages of closing argument, the State made reference to the extraneous offense in only five lines.

In an effort to substantiate Cantu's eyewitness account, the State primarily stressed the testimony of Dr. Peerwani, Chief Medical Examiner for Tarrant, Parker, and Denton counties: "The most important testimony in the trial without a doubt, [is] the medical, the autopsy. Doctor Peerwani. Totally substantiates what [Berlinda Cantu] told you happened to that child." Dr. Peerwani testified that the bruises on the victim's stomach were consistent with the knuckles on a clinched fist and that they could only have been caused by a localized force that would cause the skin of the stomach to "crush on the underlying spine." When asked whether the victim's injuries could have been caused by the Heimlich maneuver, Dr. Peerwani admitted it was possible, but explained:

In a Heimlich maneuver, we usually use the palmar aspect, and the forces are transmitted across the body surface. In other words, the force is not localized in such a fashion. And Heimlich maneuver, usually you put the arms and apply the pressure, and they usually do not cause any internal injuries. In fact, I have never seen a person die as a result of Heimlich maneuver in my 15 year career. So I really think it's quite unlikely to have happened.

Dr. Peerwani also testified that, based on the amount of healing within the tear in the victim's small bowel, the injury occurred approximately forty-eight hours prior to her death on September 6, 1993. Hernandez claimed in his voluntary statement to police that on "approx. August 30, 1993–September 2, 1993" the victim was choking on a french fry and he "panicked, came up from behind [the victim] and did a Heimlych [sic] maneuver." Based on Dr. Peerwani's testimony, Hernandez could not have inflicted the fatal injury by performing the Heimlich maneuver if he performed it between August 30 and September 2.

The State also presented the testimony of Mark Matthews, a fellow inmate in the McLennan County Jail. Matthews testified that Hernandez confessed that he had "punched" the victim in the stomach the night before she died.

PROBABLE COLLATERAL IMPLICATIONS OF THE ERROR

An analysis of collateral implications contemplates issues like the disparaging of a sole defense and the error's impact on sentencing. *Higginbotham v. State,* 807 S.W.2d 732, 737 (Tex.Crim.App.1991). Evidence that Hernandez hit the victim in the stomach two weeks before her death tends to imply that it was his conscious objective or desire to cause her serious bodily injury because it reflects

an ongoing course of violent conduct toward the victim. Accordingly, it tends to rebut the defensive theory that Hernandez injured the victim by accident or mistake while performing the Heimlich maneuver on her. Regarding the error's impact on sentencing, it seems logical that a jury would be more likely to give harsher punishment to a defendant who hit a child on more than one occasion, than one who hit a child during an isolated fit of frustration.

Having isolated the error and all its effects, we now ask whether a rational trier of fact might have reached a different result without them. *Harris,* 790 S.W.2d at 588. In doing so, we consider how much weight a juror would probably place upon the error and its probable impact on the jury in light of the existence of the other evidence. *Id.*

PROBABLE WEIGHT PLACED ON THE ERROR BY THE JURY

The record in this case contains no direct indication that the jury actually attributed significance to the extraneous-offense evidence at issue. The jury asked for "*all* state and defense exhibits and *all* charts used during the case" as well as "the pictures entered into evidence."

Looking at the record as a whole we do not believe the jury was likely to place significant weight on the extraneous-offense evidence at issue. During the guilt-innocence phase of the trial, the jury had to decide whether Hernandez intended to cause serious bodily injury by hitting the victim in the stomach or whether he accidentally injured her while performing the Heimlich maneuver. The collateral implications of the extraneous-offense evidence that tend to rebut Hernandez's defensive theory are overshadowed by similar evidence introduced by the State. In addition to the testimony of Dr. Peerwani and Mark Matthews, the court properly admitted other extraneous-offense testimony from Cantu that Hernandez "pulled [a] knife" on her during an argument, that "he hit [the victim] a couple of times on her back and her side and her arms," and that he would "go after [her] family" if he ever found out that she talked to police.

Throughout its closing argument for punishment, the State made no reference to the extraneous offense at issue. The jury had already determined beyond a reasonable doubt that Hernandez intended to cause serious bodily injury to the victim and committed an act clearly dangerous to human life by hitting her in the stomach on September 5. The jury was charged with the duty to assess punishment for offenses which were alleged to have been committed on or about that date. In light of the other evidence presented, we do not believe the jury would have reached a different result without the error and its effects.

REPETITION OF THE ERROR WITH IMPUNITY

Finally, we must consider whether declaring the error harmless would be likely to encourage the State to repeat it with impunity. As we mentioned above, the State offered the testimony in good faith and was not attempting to taint the trial process with improper evidence. "As a practical matter, prosecutors in their roles as advocates for the State, will continue to seek admission of extraneous offenses." *Higginbotham,* 807 S.W.2d at 737. Because the Court of Criminal Appeals has recently instructed that an "open-file policy" does not constitute notice of extraneous offenses, this error is unlikely to be repeated in the future. *Buchanan,* 911 S.W.2d at 15.

A review of the record compels us to the conclusion that Hernandez was not harmed by the error in admitting evidence of the extraneous offense. We find beyond a reasonable doubt that the error made no contribution to Hernandez's conviction or punishment.

**CHARGE ERROR**

■ In point three, Hernandez complains that the court erred by placing the word "first" in the title of the charge in the guilt-innocence phase of trial. The title of the charge read, "First Main Charge of the Court." Hernandez asserts that the inclusion of the word "first" implied that there would be a "second" charge to the jury. Since the jury was informed in voir dire that a second charge would only be necessary if the jury arrives at a verdict of guilty, Hernandez asserts that the use of the word

"first" conveys the court's opinion that the jury *should* find Hernandez guilty so they could receive the "second" charge. He argues that this amounted to a comment on the weight of the evidence, depriving him of the presumption of innocence and denying him a fair trial.

Because Hernandez has cited no authority to support this contention, he has waived the point. Tex.R.App.P. 74(f); *see also DeBlanc v. State,* 799 S.W.2d 701, 706 (Tex.Crim.App. 1986), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1990); *Hefner v. State,* 735 S.W.2d 608, 626–27 (Tex.App.— Dallas 1987, pet. ref'd). We overrule point three.

## CONCLUSION

Having concluded that the court's only error did not harm Hernandez, we affirm the judgment.