COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-102-CR
 
WILLIAM ARDIS SARRINGAR a/k/a       
           
           
           
        APPELLANT
COREY D. REYNOLDS
V.
THE STATE OF TEXAS           
           
           
           
           
           
    STATE
------------
FROM THE 371
ST DISTRICT COURT OF
TARRANT COUNTY
------------
MEMORANDUM OPINION(1)
------------
A jury convicted Appellant William Ardis
Sarringar, also known as Corey D. Reynolds, of aggravated robbery with a deadly
weapon and sentenced him to life imprisonment. In addition, the jury assessed a
$10,000 fine. Appellant brings four points on appeal, challenging the legal and
factual sufficiency of the evidence, the denial of his motion for new trial, the
denial of his motion for mistrial after an allegedly improper closing argument
by the State, and the admission of extraneous offense evidence at punishment.
Because we hold that the trial court did not reversibly err, we affirm the trial
court's judgment.
SUMMARY OF THE FACTS
Complainant Michael Swain testified that
early one morning before work, he was accosted by Appellant and one other person
at his workplace. Complainant stated that Appellant and his cohort forced him at
gunpoint and upon threat of death to go to an ATM, withdraw money, and give it
to Appellant, who then fled. Surveillance films at Complainant's workplace and
at the ATM site showed a firearm in view during the robbery. On the same day as
the incident, Complainant identified Appellant from a photospread. Additionally,
defense counsel stipulated that Appellant appeared in pictures taken by the
security cameras at the ATM machine and at the entrance to Complainant's
building. Defense counsel stated, "The only issue in this case is whether
or not a firearm was used."
Complainant testified that the firearm
could be seen in the various surveillance films, which were admitted into
evidence. Complainant also testified that he struggled with Appellant for the
gun and would have been killed had the safety not been engaged. Detective James
Desmarais testified that during his investigation of the case, Appellant
admitted the robbery but denied that a firearm was used or possessed during the
course of the robbery.
LEGAL AND FACTUAL
SUFFICIENCY OF THE EVIDENCE
Appellant argues that the evidence is
legally and factually insufficient to support the jury's verdict because, he
claims, he did not possess, use, or exhibit a firearm during the robbery.
Applying the appropriate standards of review,(2)
we hold that the evidence is both legally and factually sufficient to support
the verdict. Complainant's testimony alone provided ample evidence that
Appellant used a firearm. Additionally, Appellant, during questioning by
Desmarais, volunteered that he did not have a gun. He volunteered this
information despite the fact that Desmarais had never mentioned any weapons
being involved. Appellant also told Officer Royce Hearne, "I'm not going to
say I had a gun because that's ag robbery." We overrule Appellant's first
point on appeal.
MOTION FOR NEW TRIAL
In his second point, Appellant argues that
the trial court reversibly erred in denying his motion for new trial. Appellant
filed a timely motion for new trial that was overruled by operation of law. The
decision to grant or deny a motion for new trial lies within the discretion of
the trial court.(3) An abuse of discretion will
be found only when the trial judge's decision was so clearly wrong as to lie
outside the zone of reasonable disagreement.(4)
The State argues that the motion for new
trial was never presented to the trial judge.(5)
The motion contained a "certificate of presentment" signed by trial
counsel. The "acknowledgment of presentment of motion" was never
signed by the trial judge, although the motion contained a signature line for
that purpose. Thus, the record does not reflect that the motion was ever
presented to the trial court.
Even if the motion was presented to the
trial judge, as trial counsel asserts in his certificate, the grounds raised in
the motion for new trial were that the verdict was contrary to the law and the
evidence and that: 1) the evidence was factually insufficient; 2) the trial
court erred in refusing to admit a written statement by Andre Russ, who claimed
that Appellant had angrily complained to him that the police were accusing him
of having used a gun; and 3) the trial court erred in allowing the State to
introduce extraneous offense evidence when the State did not timely respond to
Appellant's timely request for notice of intent to introduce such evidence. In
appealing the denial of his motion for new trial, however, Appellant challenges
only the trial court's failure to find the evidence factually insufficient to
support the jury verdict, based on the alleged absence of the gun. In addressing
Appellant's first point, we have already held that the evidence is factually
sufficient to support the jury's verdict. Appellant does not argue that the
trial court erred in failing to grant the motion for new trial on the remaining
grounds. Any complaint regarding the denial of the motion for new trial based on
those grounds is therefore waived.(6)
Consequently, we overrule Appellant's second point on appeal.
JURY ARGUMENT
In his third point, Appellant contends the
trial court erred in denying his motion for mistrial. During the State's final
argument at the punishment phase of the trial, the prosecutor argued:

        
 But the defense has the same subpoena power as the State, and if there were
 witnesses that could testify about the contributions he's made in a positive
 way to the society, those attorneys could bring --

Appellant objected that the argument was a
comment on Appellant's failure to testify, and the trial court sustained the
objection and instructed the jury to disregard the argument. The trial court,
however, denied Appellant's motion for mistrial. The trial court's denial of a
motion for mistrial is reviewed under an abuse of discretion standard.(7)
As the State points out, there was once a presumption that an instruction to
disregard generally would not cure a comment on the failure of the accused to
testify.(8) And, as the State also points out,
the Texas Court of Criminal Appeals has stated that the presumption has
"been eroded to the point that it applies only to the most blatant
examples. Otherwise, the Court has tended to find the instruction to have
force."(9)
"[C]urative instructions are presumed
efficacious to withdraw from jury consideration almost any [objectionable]
evidence or argument."(10) Again, as the
State points out, whether the denial of the motion for mistrial was error
depends on whether the curative instruction did in fact cure the harm, if any,
created by the allegedly improper argument.(11)
Nothing in the record before us suggests
that the trial court's instruction to disregard was not effective to cure any
harm created by the allegedly improper argument. We overrule Appellant's third
point on appeal.
EXTRANEOUS OFFENSE
EVIDENCE
In his fourth point on appeal, Appellant
argues that the trial court abused its discretion in allowing the State to
introduce extraneous offense evidence at the punishment hearing over Appellant's
objection that he had not received timely notice of the State's intent to do so.
Appellant argues that before beginning the punishment phase of the trial,
Appellant objected to the State's failure to give timely notice of its intent to
offer extraneous offense evidence. In support of his objection, defense counsel
Morgan Minton stated that he had prepared, filed, and served a copy of the
request upon State's counsel. An employee of the district attorney's office
stated that she had filed the State's response to the request for notice at the
direction of the prosecutors in the case and then had faxed a copy of the
response to defense counsel. Mr. Minton's co-counsel testified that although he
had been made aware of the State's notice of intent to offer extraneous offense
evidence, he and Minton had prepared the defense of the case from the standpoint
that the State would not offer such evidence because the response to the request
had not been timely. The notice was filed on the day before jury selection
began. The State informed the trial court that its notice had been faxed to the
defense on the day it was filed, but the defense did not receive it. The State
provided the response to the defense in the courtroom immediately before jury
selection began.
The notice requirement governing
extraneous offense evidence offered at the punishment hearing provides:

        
 On timely request of the defendant, notice of intent to introduce evidence
 under this article shall be given in the same manner required by Rule 404(b),
 Texas Rules of Criminal Evidence. If the attorney representing the state
 intends to introduce an extraneous crime or bad act that has not resulted in a
 final conviction in a court of record or a probated or suspended sentence,
 notice of that intent is reasonable only if the notice includes the date on
 which and the county in which the alleged crime or bad act occurred and the
 name of the alleged victim of the crime or bad act. The requirement under this
 subsection that the attorney representing the state give notice applies only
 if the defendant makes a timely request to the attorney representing the state
 for the notice.(12)

 
Texas Rules of Evidence Rule 404(b)
provides in pertinent part:

 Evidence of other crimes, wrongs or acts
 is not admissible to prove the character of a person in order to show action
 in conformity therewith. It may, however, be admissible for other purposes . .
 . provided that upon timely request by the accused in a criminal case,
 reasonable notice is given in advance of trial of intent to introduce in the
 State's case-in-chief such evidence other than that arising in the same
 transaction.(13)

The State argues that there was no
surprise and that therefore the evidence was properly admitted, or,
alternatively, that its admission was harmless. The State concludes that there
was no surprise because Minton, at the time of trial in this case, was
representing Appellant in all the extraneous offenses admitted into evidence at
punishment. The State also points out that because Appellant received the
State's notice of intent to offer the evidence on March 13, the day of jury
selection, and no testimony was offered until March 19, defense counsel had six
days to prepare to defend against that evidence. The State argues that six days
is ample time to mount such a defense, and thus no harm resulted from the late
notice.
Contrary to the State's contentions, the
first day of trial is generally not an appropriate time to provide notice of
intent to offer evidence of extraneous offenses.(14)
"The purpose of the notice provision is to adequately apprise the defendant
of the extraneous conduct the State intends to introduce at trial so the
defendant can prepare for same."(15) The
time demands of a jury trial do not permit time for investigation. And, as the
State candidly admits, the notice request was filed on February 1, almost six
weeks before notice was finally provided.
We also disagree with the State's
contention that knowledge of the existence of extraneous offenses equates to
knowledge of the State's intention to offer evidence of them. We have previously
held that "[t]he purpose of article 37.07, section 3(g) is to avoid unfair
surprise, that is, trial by ambush."(16)
Article 37.07, section 3(g) mandates that the State provide timely notice, not
of the existence of extraneous offenses, but of its intent to offer such
evidence.(17) The fact that Appellant's trial
counsel knew of Appellant's pending cases because he represented Appellant on
those cases did not give either Appellant or trial counsel notice that the State
intended to offer those extraneous acts into evidence. Article 37.07, section
3(g) is clear and unambiguous. Notice must be provided in a timely manner and in
advance of trial. We have held that jury selection is an integral part of a jury
trial.(18) Notice must therefore be given before
trial in a timely manner, and if it is not given until jury selection, it is not
timely.(19)
At trial, however, prosecutor Haines
stated:

        
 I would like to state for the record in conclusion with our discussion this
 morning with defense motions, whether or not they were received by any State
 prosecutor, I received this file several weeks before trial. All of the cases
 involving William Sarringar, AKA Corey Reynolds, felonies and one single
 misdemeanor case, and in none of those files or any place have I recovered any
 sort of motions from the defense counsel, so I would like to note on record as
 an officer of the [c]ourt that I'm saying under oath we did not receive any
 defense motions.

Thus there was evidence before the court
that the defense had not made a request for the notice. Decisions of the trial
court to admit or exclude evidence are subject to review for abuse of
discretion.(20) The trial court determined the
credibility of the evidence and was free to believe Haines's sworn statement
that the State did not receive the request for notice of intent to offer
evidence of extraneous offenses.(21) This
determination would have been reasonable because defense counsel testified that
he had no independent recollection of delivering the request to the State,
despite the fact that the request contained his signed certificate of service
and that it was his custom and practice to deliver documents if he filled out
the certificate of service.
Additionally, under these specific facts,
the delay between jury selection and the beginning of testimony provided a
reasonable amount of time for investigation and preparation regarding the
extraneous acts listed in the State's notice. Appellant does not argue that
knowledge of the State's intent to offer the extraneous offenses would have
affected his conduct of voir dire. In light of the specific circumstances of
this case, we hold that the trial court did not abuse its discretion. We
overrule Appellant's fourth point on appeal.
CONDUCT OF COUNSEL
We commend counsel for both the State and
the defense for exhibiting the highest standards of professional courtesy in
their briefs in the case now before us. Counsel for both the prosecution and the
defense scrupulously avoided any suggestion of impropriety of opposing counsel
and went to great lengths to ensure that this court did not misconstrue any
statement as criticism of the integrity of opposing counsel. We would, however,
have appreciated more specific record citations from Appellant's counsel, as
well as pinpoint citations.(22)
Having overruled Appellant's four points
on appeal, we affirm the trial court's judgment.
 
                                                                               
LEE ANN DAUPHINOT
                                                                               
JUSTICE
 
PANEL A: DAY, LIVINGSTON, and DAUPHINOT,
JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
[DELIVERED: MARCH 6, 2003]

1. See Tex. R. App. P. 47.4.
2. See Emery v. State, 881 S.W.2d 702, 705 (Tex.
Crim. App. 1994) (providing legal sufficiency standard of review), cert.
denied, 513 U.S. 1192 (1995); Narvaiz v. State, 840 S.W.2d 415,
423 (Tex. Crim. App. 1992) (same), cert. denied, 507 U.S. 975 (1993); Johnson
v. State, 23 S.W.3d 1, 7, 9, 11-12 (Tex. Crim. App. 2000) (providing
factual sufficiency standard of review); Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996) (same).
3. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim.
App. 1995).
4. Cantu v. State, 842 S.W.2d 667, 682 (Tex.
Crim. App. 1992), cert. denied, 509 U.S. 926 (1993); Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).
5. See Tex. R. App. P. 21.6.
6. See Butler v. State, 872 S.W.2d 227, 236 (Tex.
Crim. App. 1994), cert. denied, 513 U.S. 1157 (1995); Rezac v.
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).
7. Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim.
App. 2000).
8. See, e.g., Lankford v. State, 156
Tex. Crim. 113, 239 S.W.2d 394, 395 (1951).
9. Moore v. State, 999 S.W.2d 385, 405-06 (Tex.
Crim. App. 1999) (quoting Waldo v. State, 746 S.W.2d 750, 753 (Tex.
Crim. App. 1988)), cert. denied, 530 U.S. 1216 (2000).
10. Bauder v. State, 921 S.W.2d 696, 699-700
(Tex. Crim. App. 1996).
11. See Faulkner v. State, 940 S.W.2d 308, 315
(Tex. App.--Fort Worth 1997, pet. ref'd) (op on reh'g) (en banc).
12. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g)
(Vernon Supp. 2003).
13. Tex. R. Evid. 404(b).
14. Umoja v. State, 965 S.W.2d 3, 7 (Tex.
App.--Fort Worth 1997, no pet.) (op. on reh'g) (holding notice on day of trial
untimely); see Hernandez v. State, 914 S.W.2d 226, 234 (Tex.
App.--Waco 1996, no pet.) (holding notice provided on Friday before trial on
Monday untimely).
15. Umoja, 965 S.W.2d at 7.
16. Nance v. State, 946 S.W.2d 490, 493 (Tex.
App.--Fort Worth 1997, pet. ref'd).
17. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g).
18. Watson v. State, 917 S.W.2d 65, 67 (Tex.
App.--Fort Worth 1996, pet. ref'd).
19. Umoja, 965 S.W.2d at 7.
20. Green v. State, 934 S.W.2d 92, 101-02 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997).
21. See Bonham v. State, 680 S.W.2d 815, 819
(Tex. Crim. App. 1984), cert. denied, 474 U.S. 865 (1985).
22. See Tex. R. App. P. 38.1(h).