FILED IN
COURT OF CRIMINAL APPEALS

June 15, 2015

ABEL ACOSTA, CLERK

PD-1514-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/15/2015 12:37:56 PM
Accepted 6/15/2015 2:35:58 PM
ABEL ACOSTA
CLERK

**NO. PD-1514-14**

_____

**COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS**

_____

**FROM THE 30TH DISTRICT COURT
OF WICHITA COUNTY, TEXAS**

_____

**THE STATE OF TEXAS**

**V.**

**RONNIE DABNEY**

_____

**APPELLEE'S BRIEF**

_____

**Mark H. Barber
SBOT No. 01708050
900 8TH Street, Suite 116
Wichita Falls, Texas 76301
Tel. 940-761-3009
Fax 940-761-4060**

**ORAL ARGUMENT IS REQUESTED**

# TABLE OF CONTENTS

LIST OF AUTHORITIES................................................................... iii

SUMMARY OF THE ARGUMENT................................................. 6

ARGUMENT AND AUTHORITIES............................................... 7

CONCLUSION AND PRAYER...................................................... 60

CERTIFICATE OF SERVICE........................................................ 60

CERTIFICATE OF COMPLIANCE............................................... 61

# LIST OF AUTHORITIES

## CASES

*Bass v. State*, 270 S.W. 3d 557.........................................24, 28
    (Tex. Crim. App. 2008)

*Bustillos v. The State of Texas*, 464 S.W.2d 118...............35
    (Tex. Crim. App. 1971)

*De La Paz v. The State of Texas*, 279 S.W.2d 336.............22, 24, 28
    (Tex. Crim. App. 2009)

*Devoe v. State*, 354 S.W.3d 457.........................................14
    (Tex. Crim. App. 2011)

*Gibson v. State,* 619 S.W. 2d 169.....................................26
    (Tex. Crim. App. 1981)

*Harrell v. The State of Texas,* 884 S.W.2d 154.................47
    (Tex. Crim. App. 1994)

*Hernandez v. The State of Texas*, 914 S.W.2d 226............32, 37
    (Tex. App.-Waco 1996, no pet)

*Hernandez v. The State of Texas*, 176 S.W.3d 821............38, 52, 54
    (Tex. Crim. App. 2005)

*Hoagland v. State*, 494 S.W. 2d 186.................................26, 27
    (Tex. Crim. App. 1973)

*Jaubert v. The State of Texas*, 74 S.W.3d 1........................24, 29
    (Tex. Crim. App. 2001)

*Martin v. State*, 173 S.W. 3d 463.....................................10, 15, 21, 25
    (Tex. Crim. App. 1996)

*Meadows v. State*, 455 S.W. 3d 166…………………….26
    (Tex. Crim. App. 2015)

*Mays v. The State of Texas*, 726 S.W.2d 937....................35
    (Tex. Crim. App. 1986)

*Montgomery v. The State of Texas*, 810 S.W.2d 372........9, 10, 21, 29
    (Tex. Crim. App. 1990)

*Neumann v. State*, 951 S.W. 2d 538................................35, 37
    (Tex. App.-Austin 1997, no pet)

*Perea v. The State of Texas*, 870 S.W.2d 314..................35
    (Tex. App.-Tyler 1994, no pet.)

*Powell v. State*, 63 S.W.3d 435........................................24
    (Tex. Crim. App. 2001)

*Prieto v. State*, 879 S.W. 2d 295.....................................10, 11
    (Tex. App.-Houston[14th Dist.] 1994, pet. ref'd)

*Templin v. The State of Texas,* 711 S.W.2d 30, 32........21
    *(*Tex. Crim. App. 1986*)*

*U.S. v. Brown,* 34 F.3d 569 (7th Cir. 1994)..........................13

*U.S. v. Stubbs*, 944 F. 2d 828 (11th Cir. 1991)................ 12, 13

*Washington v. State,* 943 S.W. 2d 501..............................27
    (Tex. App.-Ft. Worth 1997, pet. ref'd)

*Webb v. The State of Texas*, 36 S.W.3d, 164......................36
    (Tex. App.-Houston[14th Dist] 2000)

*Yohey v. The State of Texas, 801 S.W.2d 232* ................25

(Tex. App.-San Antonio 1990, pet ref'd)

## STATUTES

Tex. Evid. Rule 404(B).....................................6,7,9,12,16,19,23,24,25

Tex. Evid. Rule 609...........................................35-37

Tex. Penal Code Sec. 7.2..................................8, 15

## TREATISES

Brown and Rendon, *Texas Rules of Evidence Handbook* (2015)…12

Goode, Welborn, Sharlot, *Texas Practice-Guide to the Texas* .......35, 48
*Rules of Evidence* (Volume 1`-3rd Edition)

## SUMMARY OF ARGUMENT

The State was required to give notice of its intent to offer the alleged extraneous offense into evidence during its case in chief because it was material to Appellee's specific intent to promote or assist in the offense as a party. Accordingly, the State was required to give notice because it could offer this alleged extraneous offense (assuming it could prove it beyond a reasonable doubt which is disputed) into its case-in-chief without the defense ever opening the door through its opening statement.

Even assuming arguendo that the defense opens the door to the admission of an extraneous offense, the State still has to provide notice of its intent to offer the extraneous offense into evidence. Rule 404(b) by its very terms provides for the rebuttal of defensive theories and accordingly, the State has a duty to anticipate what defensive issues it may want to rebut in its case-in-chief.

The Defendant had given a video and audio statement to the first officer on the scene and told that officer that he had just arrived shortly before the officer did. The State knew in advance of trial what the defendant claimed and accordingly, cannot claim that the extraneous offense was offered as rebuttal to an unanticipated defense.

The trial court never reached the issue of whether the prosecutor willfully

violated the Court's pre-trial order because the trial court believed that the extraneous offense was proper rebuttal evidence and therefore there was no requirement to provide any notice to the defense. Accordingly, there was no violation of the court's pre-trial order. Accordingly, the Court of Appeals finding that the prosecutor's conduct was willful was appropriate.

The admission of the alleged extraneous offense was not harmless error because this was a circumstantial evidence case and the prosecutor admitted that the admission of this evidence was "essential" to defeating the defense's theory of the case.

## ARGUMENT AND AUTHORITIES

Appellee will attempt to respond to the arguments made by Appellant in the order they are presented in Appellant's brief.

**I.    Appellant was entitled to notice pursuant to Rule 404(b) and the pre-trial order that the State intended to offer the extraneous offense during the State's case-in chief.**

**A.    Assuming arguendo that the State was able to prove the extraneous offense beyond a reasonable doubt, the State could have offered the extraneous offense into evidence without the defense making any comment in opening statement or upon cross-examination of the State's witnesses because it is arguable that the extraneous offense tends in logic and common experience to make a fact of consequence more or less probable. Accordingly, the State was required to provide notice of its intent to offer this alleged extraneous offense into evidence in its case-in-chief.**

7

To determine if the State needed to provide notice of the alleged extraneous offense in this case, it is necessary to understand the nature of the issues that were disputed in the case. First, Appellee was charged with Manufacturing of a Controlled Substance. (C.R. 1:7) However, it was undisputed that Appellee was not the "meth cook". (R.R. 5:6-16, R.R. 6:91) It was undisputed that the actual person who cooked the methamphetamine had already plead guilty to manufacturing the methamphetamine.(R.R. 5:6-16, R.R. 6:91) The State had no eyewitnesses that Appellee was involved in the "cook". (C.R. 1:81-92; R.R. 6:9-22) The State had no statements from Appellee that he was involved in the manufacturing of methamphetamine. (C.R. 1:81-92; R.R. 6:9-22) The State admitted its case against Appellee was circumstantial in nature. (C.R. 1:81-92) The jury was charged on the law of parties and the State in closing argument argued to the jury that the circumstantial evidence showed Appellee was a party to the offense. (R.R. 7:37-39) Section 7.02 of the Texas Penal Code provides when a person is criminally responsible for the conduct of another and reads as follows:

> (a) A person is criminally responsible for an offense committed by the conduct of another if:
>
> (2) acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense;

8

It has also long been the law that mere presence at the scene of offense is not a crime. The issue at the trial was whether Appellee was merely present at the scene of the offense or whether he was a party to the offense because he acted with intent to promote or assist the commission of the offense.

It is important to determine when an extraneous offense is admissible on the issue of intent because Section 7.02 has a specific intent requirement. Appellant wrongly assumes that an extraneous offense can only be offered by the State in its case-in-chief if the defendant "opens the door" through his opening statement or through cross-examination of the State's witness. This is not at all the case and has never been the law. In *Montgomery v. State*, 810 S.W. 2d 372, 391(Tex. Crim. App. 1990)(on rehearing), this Court held that the trial judge must conclude that the evidence challenged under Rule 404(b) tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable that it would be without the evidence. In *Montgomery*, this Court analyzed the newly enacted Rule 404(b) to determine when an extraneous offense is admissible. *Id.* This Court has stated that an extraneous offense is admissible in the State's case-in-chief in the following instances:

> That is a "party" may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an

elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact.

*Martin v. State,* 173 S.W. 3d     (Tex. Crim. App.   1996).

**"Intent to promote or assist in the commission of an offense"** is an elemental fact that the State is required to prove when they allege that a person is a party to the offense.   Tex. Penal Code Sec. 7.2. The 14th Court of Appeals in *Prieto v. State*, 879 S.W. 2d 295 (Tex. App.–Houston [14th Dist.] 1994-writ ref'd n.r.e.) summarized nicely the law as to the admissibility of extraneous offenses in the State's case-in-chief citing this Court's decision in *Montgomery*:

> The test for the admission of extraneous offenses requires the determination of two issues:
>
> (1) whether the offense is relevant to a material issue in the case, other than the defendant's character, under Tex. R. Crim. Evid. 404(b); and
> (2) whether the probative value of the extraneous offense is substantially outweighed by the danger of unfair prejudice to the defendant under TEX. R. CRIM. EVID. 403.
>
> *Montgomery v. State*, 810 S.W. 2d 372, 287-88 (Tex. Crim. App. 1991) (opinion on reh'g); *Plante v. State*, 692 S.W. 2d 487, 491 (Tex. Crim. App. 1985) Evidence of an extraneous offense is relevant where, apart from character conformity, it tends to establish some elemental fact, such as intent. Montgomery, 810 S.W. at 387 (citing Tex. R. Crim. Evid. 404(b)). **If relevance is established, the evidence should be admitted absent a further objection under Rule 403.** Id. At 389. Should such an objection be made, the trial court must determine whether the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice to the defendant. Id.   The

10

trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence. Id. The appellate court will not reverse the trial court's decision under this test unless a clear abuse of discretion is shown. Id. at 391-392.

In *Prieto*, the defendant was on trial for Injury to a Child. The 14th Court of Appeals opinion never suggests that the defense "opened the door" to the admission of extraneous offenses evidence in its opening statement or through cross-examination of the State's witnesses. During its case-in-chief, the State called a neighbor, Gwen Alford, to testify that "while appellant was in residing in the apartment next to hers, she often heard him yelling at Trevor and heard cries of pain. She once saw him tell Trevor, "Get your m–f–ing ass in this house or I'm going to beat your g–d–m a–" On two occasions, she observed appellant grab Trevor roughly by the arm and throw him several feet into the house."

The 14th Court of Appeals held as follows concerning Alford's testimony:

> First turning to the admissibility of Alford's testimony under Rule 404(b) (relevancy), the record shows that her testimony tended to establish the material element of appellant's intent at the time of the burning. **The extraneous offense is relevant if its presence makes appellant's criminal intent more likely than would be assumed in its absence.** *Plante,* 692 S.W. 2d at 493. In this case, appellant's past abusive treatment of Trevor makes his criminal intent to injure Trevor more likely than without the past abusive treatment. Because Appellant had shown a similarly unlawful assaultive intent toward Trevor on prior occasions close in time, it was less likely that he had lawful intent during the charged offense. See Robinson v. State, 701 S.W. 2d 895, 898 (Tex. Crim. App. 1985); see also Plante, 692 S.W. 2d

11

at 491-92 (both cases applying the "doctrine of chances" to the relevance of extraneous evidence). We hold that Alford's testimony was relevant to the issue of intent.

When a crime requires both intentional or knowing conduct plus a specific intent (e.g., possession of drugs with intent to distribute), evidence of uncharged misconduct is necessarily relevant and is likely to be admissible in the prosecution's case-in-chief. Brown and Rendon, *Texas Rules of Evidence Handbook*, 262 (2015) In *U.S. v. Stubbs*, 944 F.2d 828 (11th Cir.1991), the State offered testimony of an extraneous offense through a co-defendant during its case-in-chief as follows:

> Q. You stated that Mr. McBride [defendant's boyfriend] and Ms. Stubbs [defendant] are unemployed. Howe do they maintain themselves?
> A. They sell herb, marijuana.

Defendant objected that the testimony was inadmissible pursuant to Rule 404(b). The Court summarized the law and ruled as follows:

> We have adopted a three-part test to govern the admissibility of evidence under Rule 404(b):
>
> (1) the evidence must be relevant to an issue other than defendant's character;
> (2) the probative value must not be substantially outweighed by its undue prejudice;
> (3) the government must offer sufficient proof so that the jury could find that the defendant commited the act.
>
> All three requirements are satisfied here; the first two are met because "[e]vidence of prior drug dealings is highly probative of intent to

distribute a controlled substance, as well as involvement in a conspiracy.

The defense did not "open the door" to this evidence through any means. It was admissible to show the specific intent element (intent to distribute) and to show that he was a party to a conspiracy in the State's case-in-chief and was not "rebuttal evidence".

In *U.S. v. Brown,* 34 F.3d 569 (7th Cir.1994), the defendant was on trial for conspiracy and attempted purchase of cocaine. The government offered in its case-in-chief four witnesses that testified that the defendant either bought drugs from them or sold drugs to them. Id at 572. The Court stated that "the testimony was only meant to establish that if he committed the acts with which he was charged he committed them intentionally, not inadvertantly. Id at 573. The Court held as follows:

> Generally, evidence of past bad acts is inadmissible as proof of a defendant's character and propensity to commit crimes; however, under certain circumstances conditions prior bad acts may be admitted as proof of an element of a crime, such as intent, if the act demonstrates how the defendant's behavior was purposeful rather than accidental. See Fed. R. Evid. 404(b); United States v. Beasley, 809 F. 2d 1273, 1278 (7th Cir. 1987); 2 Wigmore, Evidence Section 3122 (3d ed. 1940) ("the oftener a like act has been done, the less probable it is that it could have been done innocently."). Brown argues that the government's evidence falls below this initial hurdle because he was not claiming to have committed the acts with innocent intentions, but rather he was claiming not to have committed the acts at all. **Where, as here, the**

**crime charged does require proof of a defendant's specific intent, circuit law hold that 404(b) evidence will always at least be relevant....Evidence of prior bad acts may be admissible in a case where the defendant is accused of committing a crime with a specific intent, despite his concession of intent, if the evidence still satisfies the other conditions of admissibility.**

Id.

In this case, the defense did not "open the door" to extraneous offenses. The

Court held that in a case where the government has to prove "specific intent"

extraneous offenses are admissible in the government's case-in-chief.   Id.

Accordingly, the government would have to give notice of its intent to offer this

evidence during its case in chief pursuant to Rule 404(b).

This Court has ruled similarly in *Devoe v. State*, 354 S.W. 3d 457 (Tex. Crim.

App. 2011). At a pre-trial hearing, the trial ruled that the State could offer various

extraneous offenses into evidence during its case-in-chief.   Devoe, at 469-70.

Obviously, the defendant had not "opened the door" to the admission of the evidence

because the trial had not even started.   This Court ruled as follows:

> We note that Appellant contends that because "no one was challenging the State's version of events, "the introduction of the extraneous offenses was unnecessary to provide identity or any of the other Rule 404(b) exceptions.   The argument is without merit.   Appellant did not plead guilty, and he argued at closing against a finding of guilt.   When the identity of the perpetrator can be established by circumstantial evidence only, identity is a contested issue even if the defense rests with the State, puts on no evidence and raises no defensive theories.   See

14

Jones v. State, 568 S.W. 2d 847, 858-60 (Tex. Crim. App. 1978).

Id., at 470-71.

Similarly, in this case the State admitted to the Court that this was a circumstantial evidence. Accordingly, under this Court's ruling the extraneous offense was admissible on the issue of "specific intent" even if the State raised no defensive theories in its opening statement or cross-examination. Id. Accordingly, the State was required to provide notice under Rule 404(b) and the pre-trial order.

In this case, the State was required to prove that not only did a person intentionally or knowingly manufacture methamphetamine, it had to prove that Appellee had the **specific intent** to promote or assist the commission of the offense. See Tex. Penal Code Sec. 7.02. Accordingly, the State had the burden to prove the **elemental fact** of Appellee's specific intent to promote or assist in the commission of the offense. In Martin, this court said the that a "party" may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to **make more or less probable an elemental fact**, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact. *Martin,* 173 S.W. 3d at 466. The State's offer of this alleged extraneous offense went to an elemental fact and therefore was not "rebuttal evidence." As a result, the State

15

was required to provide notice of its intent to do so.   The trial court erred in allowing the alleged extraneous offense into evidence.

**B.** **Assuming arguendo that the State was able to prove the extraneous offense beyond a reasonable doubt, the State had to provide notice of its intent to offer the extraneous offense because the notice requirement still applies even if the defense  "opens the door" to the admission of the extraneous offense.**

Rule 404(b) provides as follows:

> (B)    Other Crimes, Wrongs or Acts.   Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, **reasonable notice is given in advance of trial of intent to introduce in the State's case-in chief such evidence other than that arising in the same transaction**.

Approximately four months before the trial, Appellee requested that the State provide notice of any extraneous offenses it intended to offer in its case in chief. (C.R. 1:26-27) On or about May 24, 2012, Appellee filed a "Request for Notice of State's Intention to Use Evidence of Extraneous Offenses at Trial".   (C.R. 1:26-27) The notice requested the following:

**Rule 404(b)**

> Pursuant to Rule 404 (b), notice, at least ten days prior to the commencement of trial, by the State of its intent to introduce evidence in its case in chief of any other crimes, wrongs, or acts allegedly committed by Defendant, other than those alleged in the Indictment or Information in this cause. Such notice to include for each incident all discovery required to be produced by the State in this Court's discovery orders entered in this cause.

(C.R. 1:26-27)

On or about May 24, 2012, the Court entered a pre-trial order which stated in part as follows:

> 8. **NOTICE OF EXTRANEOUS OFFENSES.** The Prosecution shall provide reasonable notice of any such extraneous offenses it intends to introduce at either stage of trial.

The prosecutor actually signed the pre-trial order (C.R. 28) and at a final pre-trial hearing on September 7, 2012, Appellee reminded the Court that pre-trial orders had already been signed. (R.R. 2:7)

On August 27, 2012, the State filed The State's Notice of Extraneous Offense, Prior Bad Acts, & Prior Convictions. (C.R. 1:61). The document read as follows:

> The State of Texas files this notice of intent to prove up the following at the punishment phase of the trial:
>
> 1. The Defendant committed the offense of Driving While Intoxicated in Wichita County, Texas on or about June 16, 2012. The Defendant blew a .12 on the breath test at jail. The Defendant is charged by information in 57782-F with this offense. A copy of the report and videos are available

17

for review in the State's file in this cause.

(C.R. 1:61)

The State gave no other written notice of its intent to offer extraneous offenses into evidence. (C.R 1:61)

On September 17, 2012, both the State and Appellee conducted their respective voir dire of the jury panel and a jury was selected (R.R. 4) During voir dire, Appellee questioned the panel as to whether it was possible that an innocent person could be found in suspicious circumstances and be arrested although not actually guilty of an offense. (R.R 4:146-47). On September 18, 2012, opening statements were made and the State called eight witnesses to the stand before the end of the day (R.R. 5:7-117)

In his opening statement, Appellee's counsel made the following comments:

> This case----I have talked to you about movies where an innocent person is found in suspicious circumstances and they're arrested, convicted, sent to prison and they escape. In the rest of the movie they're trying to show themself to be innocent when they are, in fact, innocent. That's what happens in this case. Ronnie is living that in real life.

(R.R. 5:16-17) Additional statements were made that Appellee was innocent, had come home just minutes before the police showed up, and was unaware that an individual was on his property manufacturing methamphetamine (R.R. 5:16-20).

18

On the third day and last day of the guilt/innocence phase of the trial (September 19, 2012) the State filed a brief entitled "The State's Bench Brief on Rebutting the Defensive Theory of Accident/Mistake." (C.R. 1:81-91) The State argued in its brief and to the Court that an extraneous offense (Manufacturing of a Controlled Substance) should be allowed into evidence in its case-in-chief through Bobby Dilbeck, even though no notice had been given as required by Rule 404 (b) and the Court's pre-trial order. (C.R. 1:81-91; R.R. 6:9-22) Specifically, the prosecutor told the Court the following:

> The testimony that I would proffer, I've attached Bobby Dilbeck's report. In July of 2004, the North Texas Regional Drug Task Force executed a search warrant at the same residence, 823 Rathgeber. The Defendant was present. There was an active meth lab in that trailer...

(R.R. 6:11-12) The prosecutor further told the Court the following:

> The similarities between the 2004 event and this event is almost identical except the meth lab is in the trailer not the shop. But otherwise, it's his residence, same place, he's present when the search warrant is executed, and all of these acutrements of a meth lab are found right there.

(R.R. 6: 14)

At the hearing outside of the presence of the jury, Appellee objected on the grounds that Rule 404(b) requires the State to provide notice of any extraneous offense that it intends to offer during its case in chief. (R.R. 6:15-22). The State

19

argued in its written proffer and to the court that it did not have to provide notice to Appellee of its intent to offer this extraneous offense in its case-in-chief because it was **"rebuttal evidence"** which was offered to rebut the defensive theory of accident or mistake. (C.R. 1:81-91; R.R. 6:9-21) The Court ruled that evidence of the extraneous offense was admissible. (R.R. 6:21)

Interestingly, Dilbeck testified that he had worked for the Wichita County District Attorney's Office for almost four years (R.R. 6: 23) This was well before Appellee was arrested on the present charge. Nonetheless, Dilbeck admitted that his own boss, the prosecutor, had never interviewed him about the events that occurred in 2004 until after the second day of trial. (R.R. 6:28). Dilbeck testified that he had not looked at the probable cause affidavit until the morning of the third day of trial. Dilbeck's report was not in the State's file prior to trial. (R.R. 6:16).

The State contends that the extraneous offense was "rebuttal evidence" and as a result, it does not have to comply with Rule 404 (b). The State confuses this Court's prior rulings and the law on extraneous offenses. It is a generally accepted proposition of law that a defendant is entitled to be tried on the accusation in the

State's pleading and not for a collateral crime or for being a criminal generally. *Templin v. State*, 711 S.W. 2d 30, 32 (Tex. Crim. App. 1986). Rule 404(a) generally prohibits the use of character evidence to prove conforming conduct. The first sentence of Rule 404(b) reiterates this principle by specifying that evidence of other crimes, wrongs, acts is not admissible where the purpose is to "show action in conformity with" that character. See Tex. Evid. Rule 404(b) However, this type of evidence is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Tex. Evid. Rule 404(b). In *Montgomery v. State*, 810 S.W. 2d 372, 391(Tex. Crim. App. 1990)(on rehearing), this Court held that the trial judge must conclude that the evidence challenged under Rule 404(b) tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable that it would be without the evidence. One well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense. *Martin v. State*, 173 S.W. 2d 463, 466 (Tex. Crim. App. 1996); *Montgomery*, 810 S.W 2d at 387. That is a "party" may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence

21

that undermines an elemental fact. *Martin,* 173 S.W. 3d at 466. But a mere denial of commission of an offense generally does not open the door to extraneous offenses because, as appellant properly points out, a defendant generally denies commission of the offense at trial-that is the reason for having a trial. *De La Paz v. State*, 279 S.W. 3d 336 (Tex. Crim. App. 2009) It seems evident that the "other purposes" listed in Rule 404(b) that justify the admission of an extraneous offense are primarily to allow the State to rebut or offer evidence to overcome defensive theories. See Tex. R. Evid. 404(B) For example, an accused will defend against an allegation claiming that he did not intend to commit the crime thus putting intent in issue. An accused will claim that he was not the person who committed the crime or that he had an alibi putting identity in issue. An accused will sometimes contend that the alleged criminal conduct was an accident or mistake thus challenging the issue that he did not intend to commit the crime. Because an extraneous offense has to be offered "to make the existence of a fact of consequence more or less probable", the Rule 404(b) notice provision puts a burden on the State to evaluate a case pre-trial to determine what issues (facts of consequences) will be material to proving its case and/or raised by the defense and provide the proper pre-trial notice if it intends to offer an extraneous offense in its case-in-chief. This is, of significance, because the State at trial and at the hearing on Appellee's Motion for New Trial claimed that

22

since it was rebutting the defensive theory of mistake or accident in its case in chief, it did not have to provide the notice required by Rule 404(b) because such evidence was "rebuttal evidence". (C.R. 1:81-92; R.R. 6:9-21;R.R. 9:4-10) Rule 404(b) provides that the "absence of mistake or accident" is one of the "other purposes" that make extraneous offenses admissible. Rule 404(b) states clearly that if the State is going to offer an extraneous offense to show an absence of mistake or accident in its case in chief that it has to provide the Appellee notice when it is timely requested. However, the State contended in its trial brief and at the hearing on Appellee's Motion for New Trial that it did not have to provide notice of this extraneous offense because it was rebuttal evidence because it was used to rebut a defensive theory. (C.R. 1:81-92; R.R. 6:9-21; R.R. 9:4-10) The State's logic would make the notice provision of Rule 404(b) null and void. According to the plain meaning of Rule 404(b), if the State claims they are offering the evidence **on the issue of absence of mistake or accident** the State has to provide notice of the extraneous offense prior to trial if requested. However, if the State claims they are offering the evidence in its case-in-chief **to rebut the defensive theory of mistake or accident**, then it is rebuttal evidence and they do not have to provide notice. In short, all the State ever has to do is claim it is rebutting a defensive theory in its case-in-chief and it does not have to provide notice. For example, they could claim they are **rebutting the**

23

**defensive theory of alibi** instead of offering the extraneous offense on the issue of identity and therefore transform it into rebuttal evidence such that they would not have to provide notice. One could go to every "other purpose" mentioned in Rule 404(b) and continue to show the ridiculous argument made by the prosecutor at trial. The State relies on this Court's decisions in *Powell v. State*, 63 S.W. 3d 435, 439-440 (Tex. Crim. App. 2001), *Bass v. State*, 270 S.W. 3d 557 (Tex. Crim. App. 2008), *Jaubert v. State*, 74 S.W. 3d 1 (Tex. Crim. App. 2002) and *De La Paz* v. State, 279 S.W. 3d 336 (Tex.Crim. App. 2009) to argue that it presented "rebuttal evidence" in its case-in-chief and did not have to provide notice under Rule 404(b). However, none of these cases in anyway deal with providing notice under Rule 404(b) when the State offers evidence of an extraneous offense in its case-in-chief. All these cases stand for is that the defense **"opens the door"** to the admissibility of extraneous offenses if it raises its defenses in opening statement or through cross-examination of a State's witness. This is summarized by this Court's holding in *Bass v. State*, 270 S.W. 557, 563 (Tex. Crim. App. 2008) as follows:

> Our case law supports a defense opening statement, like that made in this case, *opens the door* to the admission of extraenous-offense evidence, like that admitted in this case, to rebut the defense the defensive theory presented in the defense opening statement. See *Powell v. State*, 63 S.W. 3d 435, 438-440 (Tex. Crim. App. 2001).

24

These cases discuss the fact that the defense "opens the door" to the admission of evidence  if it raises a defense.   This is consistent with this Court's opinion in Martin where this court held as follows:

> That is a "party" may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact.

*Martin,* 173 S.W. 3d at 466.    In short, the defense "opens the door" to the admission of the extraneous offense when it raises a defensive issue in opening statement or in cross-examination because there is a material disputed issue of fact. See Tex. R. Evid 401, 402.   However, it does not make the evidence "rebuttal evidence" such that notice of the extraneous offense does not have to be given pursuant to Rule 404 (b) or that the witness who will provide this "rebuttal evidence" would not have to be named on a witness list.

The State claims that the *Yohey v. State*, 801 S.W. 2d 232 (Tex. App.-San Antonio, 1990, pet. ref'd) as its authority for its position.   However, like many of the statements made by the prosecutor at the trial, his statement that the *Yohey* case was applicable was misleading.   In *Yohey*, the defense during its case-in-chief called a psychiatrist who testified that "the killings were not the result of premeditated acts by the Appellee, that Appellee was incapable of putting together

25

an elaborate plan, and that Appellee was not a man of violence save in limited circumstances." Id, at 236. After the defense rested, the State called witness during its rebuttal and proved up extraneous offense. The Court held that the notice requirements of Rule 404(b) only applied to extraneous offenses that the State intends to offer in its case-in-chief and not during rebuttal. Id, at 235. *Yohey* does not stand for the proposition that if the State offers an extraneous evidence during its case-in-chief, it can rename it "rebuttal evidence" and avoid the notice requirements of Rule 404(b). The State also relies on *Gibson v. State*, 619 S.W. 2d 169 (Tex. Crim. App 1981) and *Hoagland v. State*, 494 S.W. 2d 186 (Tex. Crim. App. 1973) in contending that State does not have to give notice of its intent to offer an extraneous offense in its case-in-chief at guilt/innocence. Both of these cases were decided prior to the Texas Rules of Evidence were enacted and this Court in *Meadows v. State*, 455 S.W. 3d 166 (Tex. Crim. App. 2015) held that the Texas Rules of Evidence overruled prior common-law evidentiary doctrines. Nonetheless, neither case suggests that the Rule 404(b) notice requirement is inapplicable when the State attempts to offer evidence of an extraneous offense after the defense has "opened the door" through its opening statement or cross-examination of a State's witness. In *Gipson*, the Defendant plead guilty to the charges and at punishment the Defendant testified that he was forced to rape the

26

victim. Id at 619. In its true rebuttal case, the State offered other alleged rape victims of the defendant to rebut the claim that defendant was forced to rape the victim in the case at bar. Id. at 619. This case is not in any fashion similar to the one before the Court. In *Hoagland,* the Defendant testified in his case-in-chief that he did not touch the girl's breasts or private parts and that the girl in question actually kissed him. *Hoagland*, at 186.During its true rebuttal case, the State called another alleged 10 year old victim who testified that the Defendant exposed himself to her. Id. at 186. Again this case, the facts of this case are not similar to the one before this court. The last case cited by the State which it claims supports its position that it was not required to give notice of its intent to offer the alleged exraenous offense into evidence during its case-in-chief because it is "rebuttal evidence" is *Washington v. State*, 943 S.W. 2d 501 (Tex App.-Fort Worth 1997) *Washington* is another case where the State offered evidence of an extraenous offense during its rebuttal case after the defense put on an expert witness of which it had not notice. This case again is vastly different from the case at hand.

The State cites no case to this Court that stands for the proposition that when the defense allegedly opens the door to the admission of an extraneous offense in its case-in-chief, that Rule 404(b) does not apply. What the State wants this Court to do is to legislate from the bench do away with the notice requirement of Rule 404(b).

27

If the Court follows the State's logic, the State will never have to provide notice of any extraneous offense because either the defense will open the door through its opening statement or through trying to cross-exam the State's witnesses. The question has to be asked: "When would the notice requirements ever apply to a fact situation?" Additionally, what the State does not point out is that the defense relies on the notice provisions to develop its trial strategy. Further, the logic of the State's position would also change the rules concerning witness lists. The defense could ask for a witness list pursuant yet the State would not have to list the "rebuttal witnesses" of these alleged extraneous offenses. This is all clearly contrary to the public policy statement made in the Michael Morton Act whose purpose was to prevent the hiding of witness and other information.

The Court of Criminal Appeals cases cited by the State in its trial brief (*De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009); *Bass v. State*, 270 S.W.3d 557, 562 (Tex. Crim. App. 2008) in no way deal with the notice requirement of Rule 404(b). Both stand for the proposition that an defendant through its opening statement can give notice of what its defensive theory is such that the State can rely on that and present extraneous offenses during its case-in-chief on the contested issue. As the Court would say in *Montgomery*, under the circumstance presented in those two cases, the opening statement puts a fact in issue and the extraneous

28

offenses offered during its case-in-chief" make the existence of a fact of consequence more or less probable". *Montgomery*, at 391.

This is why it is essential that it is understood that Rule 404(b) primarily allows extraneous offenses into evidence to challenge the issues that the defendant puts in issue such as intent, alibi, opportunity, mistake or accident. Accordingly, the State has some burden to anticipate these defensive theories and provide notice of the extraneous offenses during its case-in-chief. To rename something a "rebuttal of a defensive theory" such that it becomes "rebuttal evidence" and not subject to the notice provision is to legislate from the bench and wipe away Rule 404(b). If the prosecution's argument stands, prosecutors can play games with Rule 404(b) and surprise an accused. Judge Cochran in her concurring opinion in *Jaubert v. The State of Texas*, 74 S.W.3d 1, (Tex. Crim. App. 2002) stated as follows:

> I join the majority opinion. I add this concurrence simply as a reminder that the letter of the law is not always a perfect reflection of the spirit of the law. The spirit of Rule 404(b), article 37.07, Section 3(g), and article 38.37 is to ensure that criminal proceedings are not a contest of clever gamesmanship or trial by ambush.

*Jaubert*, at 5-6.

Rule 404(b) is clearly violated in both the letter and spirit of the law when instead of offering evidence to show "absence of mistake or accident" it is offered to "rebut the defensive theory of mistake or accident". According to the State, the

addition of five words allows it not to give notice to the Defendant of an offense for which he was never arrested, indicted or convicted. This clearly the striking of a "foul blow" described by Judge Cochran in *Jaubert*.

**C.      The State knew well before the trial that the Defendant would claim that he was merely present at the scene of the offense and not a party to the offense.   Accordingly, he cannot claim that the extraneous offenses were "rebuttal evidence" to a defensive theory he could not anticipate.**

Further, the prosecutor mislead the trial court in suggesting that he could not anticipate the defensive theory of mistake or accident and therefore his rebuttal of that defense theory was rebuttal evidence.   (C.R. 1:81-92) In reviewing the State's file, counsel noticed that Officer Dottie Whitefield (the first officer on the scene) had interviewed Appellee and recorded his statement.   Appellee filed a motion for the production of this statement. At the final pre-trial, there was a discussion about this statement in the presence of the Court (R.R. 2:4-7) The State represented that they obtained the video but that the audio did not work. (R.R. 2:4–7) Nonetheless, Officer Whitefield admitted that Appellee told her at the scene that he had just arrived at his house before she had:

Q.      Officer, did you review your report before testifying today?

A.      Yes.

Q.      Did it refresh your memory

30

A.     Yeah.

Mr. Barber:  Your Honor, I'd ask to be able to review it, discuss it with the officer.

Mr. Gillespie:     I tender a copy of the report.

Court:               So noted

(R.R. 5:57)

Q.     All right. Now, did you Mirandize and interview any of these folks about their knowledge of what was going on out there?

A.     I Mirandized them.

Q.     Okay.   Did you interview them?

A.     I asked them what—I believe I asked them about what was going on over in the shed, yes.

Q.     Okay.   Now, for some reason that video and audio didn't record; is that correct?

A.     Oh, that, I don't know.

Q.     Okay.   Have you reviewed the video or audio recording?

A.     Not since.

Q.     Okay.   Because it says, on video and audio I Mirandized all subjects.

A.     Uh-huh.

Q.     Correct?

A.     Yes.

31

> Q. And Mr. Dabney said that he had only been there a few minutes. Correct?
>
> Mr. Gillespie:     Objections.   Calls for hearsay.
>
> The Witness:     Yes.

(R.R. 5:59-60)

The State had in its file the report of Officer Whitefield (R.R. 5:57).   The report clearly stated that Appellee claimed to have just arrived at the scene.   (R.R. 5:59-60).   The State knew that Defendant had given a recorded statement to the first officer that had arrived on the scene. (R.R. 5:57) Yet, the prosecutor had the audacity to claim that it was offering the extraneous offense as rebuttal evidence to rebut unanticipated evidence. (C.R. 1:81-92; R.R. 6:9-21; R.R. 9:4-10).

In *Hernandez v. The State of Texas*, 914 S.W.2d 226, 234-235 (Tex. App.-Waco 1996, no pet.), the Waco Court of Appeals dealt with the argument made by the prosecutor in this case.   The Court stated as follows:

> Finally, the State argues that extraneous-offense testimony is a form of rebuttal evidence, and that Rule 404(b)'s notice requirement is not applicable to rebuttal evidence.   See id. Even though the testimony in question was offered during the State's re-direct examination of Cantu in the State's case-in-chief, the State urges us to treat the testimony as rebuttal evidence.   The State opines in its brief: "Where Appellee has opened the door to otherwise inadmissible evidence through cross-examination, how could the State be aware that the situation would arise so as to be able to prepare a pretrial notice?

First, the State's own motion shows that it was aware of the situation and had already attempted to provide the requisite pre-trial notice of the event. Cantu gave a statement to police on October 5, 1993, describing the extraneous offense in question. The State has argued that this statement was available to the defense over a year before the trial through open-file discovery. Obviously, it was also available to the State. Further, in the untimely "State's Motion to Introduce Extraneous Offenses in its Case-in-Chief," the State lists the same extraenous offense that is in question: "On an occasion during the last weeks of August, 1993, Defendant hit or punched [the victim] on or about the stomach during a fight with Berlinda Cantu."

Second, Rule 404(b) plainly requires that the State give reasonable notice "in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction." Id. (Empahsis added). The literal text of the rule demonstrates the fair objective meaning of the rule—that it applies during the State's case-in-chief. See Hernandez v. State, 861 S.W. 2d 908, 909 (Tex. Crim. App. 1993). The Code of Criminal Procedure dictates the order of proceeding in a trial:

4. The testimony of the part of the State shall be offered
5. The nature of the defenses relied upon and the facts expected to be proved in their support shall be stated by defendant's counsel.
6. The testimony on the part of the defendant shall be offered.
7. Rebutting testimony may be offered on the part of each party.

Tex. Code Crim. Proc. Ann. Art 36.01 (Vernon Supp. 1995) (emphasis added). Plainly, the State cannot introduce "rebutting testimony" during its case-in-chief because the defendant has yet to introduce any evidence for it to rebut.

The State also contended at trial that it had given proper notice to the defense

that it intended to offer evidence of an extraneous offense of Manufacturing of a

Controlled Substance in its case-in-chief by filing a Rule 609 notice concerning a conviction for possession of a controlled substance. (C.R. 1:81-92; R.R. 6:9-21). On or about November 1, 2011, the State filed its Original Notice of Intent to Introduce Prior convictions "for impeachment purposes as provided in Rule 609(f) of the Texas Rules of Evidence and in the punishment phase of the trial under Article 37.07, Sec 3 of the Texas Code of Criminal Procedure". (C.R. 1:56-57) The notice stated as follows:

> The State gives notice of intent to use the following prior convictions for impeachment and/or punishment:
>
> 1) 42517-A                                  POCS 8/19/05

(C.R. 1:56-57).

The State mislead the Court by stating that this somehow put the Appellee on notice that it intended to offer in its case in chief an extraneous offense of Manufacturing of a Controlled Substance. Rule 609 provides that "for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime is a felony or involved moral turpitude". Tex. Evid. R. 609. This rule does not allow the introduction of a conviction into evidence during the State's case-in-chief. Only if the defendant testifies does it potentially

34

allow the admission of the conviction to "impeach" the defendant's credibility.

> "A criminal defendant with a prior record thus finds himself hooked on the horns of a dilemma. If the defendant testifies, the jury will learn of his criminal past and perhaps will convict him because he is a bad person. Yet if he remains silent, he runs the risk that the jury will infer guilt from his failure to testify.

Goode, Wellborn and Sharlot, *Texas Practice-Guide to the Texas Rules of Evidence*, Section 609.1 (Volume 1`-3rd Edition 2002) Accordingly, counsel had to be concerned about this conviction for POCS coming into evidence only if the Defendant testified. Accordingly, the Rule 609 notice gave no notice that the State intended to offer an extraneous offense of Manufacturing of a Controlled Substance in the State's case-in-chief. Secondly, the conviction that was going to potentially used to impeach the Defendant was for Possession of a Controlled Substance not Manufacturing of a Controlled Substance. Further, the specific facts or details of the alleged crime are not allowed into evidence under Rule 609. Although the fact that a witness has been previously convicted of a crime may be introduced into evidence, the details of that offense are inadmissible. *Mays v. State*, 726 S.W.2d 937 (Tex. Crim. App. 1986); *Bustillos v. State*, 464 S.W.2d 118, 119 (Tex. Crim. App. 1971) *Perea v. State*, 870 S.W.2d 314 (Tex. App.-Tyler, 1994, no pet.). Accordingly, notice that a conviction for POCS is going to be offered under Rule

35

609 provides no notice to a Defendant that the State is going to intend to offer an extraneous offense of manufacturing in its case-in chief.

In *Webb*, the Court of Appeals summarized previous caselaw on what did not consitute proper notice under Rule 404(b):

> The State argues in its supplemental brief on rehearing that the complainant in the extraneous offense (Porter) was on its subpoena list and therefore, the Appellee should not have been surprised by the State's intent to present her testimony on an extraneous offense at trial. The State's argument both overlooks and exemplifies the primary purpose of Rule 404(b)'s notice provision----to inform the defendant of the State's intent to use extraneous evidence so that the defendant can prepare his defense. See Tex. R. Evid. 404(b); Hayden, 13 S.W. 3d at 77; Self, 860 S.W. 2d at 264. The Texas Court of Criminal Appeals has made it clear that the burden of compliance with this rule is on the State; no intent is presumed. In Buchanan v. State, 911 S.W. 2d 11 (Tex. Crim. App. 1995), the Court noted that "the mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicated an 'intent to introduce' such evidence in its case in chief." 911 S.W. 2d at 15. Likewise, merely witnesses who could give testimony concerning other crimes, wrongs, or acts of the defendant does not communicate an intent to use evidence of such matters at trial. A witness on the subpoena list could have evidence of extraneous offenses as well as other types of evidence; thus, the mere fact that the witness is subpoenaed to testify does not necessarily support an inference that the witness is being subpoenaed for the purpose of giving evidence of other crimes, wrongs, acts..

*Webb v. The State of Texas*, 36 S.W.3d 164 (Tex. App-14th Dist. 2000)

Similarly, a Rule 609 notice of a conviction for a different offense which can only be used to impeach the Defendant if he takes the stand and where no details

concerning the alleged offense could come into evidence does not provide notice that the State intends to offer into evidence a different offense in its case-in-chief.

Advising defense counsel on the third and last day of the guilt/innocence phase of the trial is obviously not sufficient notice. Rule 404(b) says the notice has to be given "in advance of trial". See Texas Rule of Evid. 404(b). The third and last day of the guilt/innocence phase is not in advance of trial. When notice was requested ten months before trial and written notice was given on Friday afternoon before trial was to begin on the following Monday, the notice was not reasonable. See *Hernandez v. State*, 914 S.W.2d 226, 234-235(Tex. App.—Waco 1996, no pet.) Notice given the morning of trial where Rule 404(b) request was made six weeks before was not reasonable. *Neumann v. State*, 951 S.W.2d 538, 540 (Tex. App.— Austin 1997, no pet.) In *Webb*, the defendant requested notice six months before trial and received it on the Thursday before trial on the following Monday. *Webb,* at 178. The Court in *Webb* stated that the Appellee had only one business day before trial to prepare for the cross-examination of this important witness and to make any necessary adjustments to trial strategy and accordingly the notice was not timely. *Webb*, at 178. In this case, counsel had no time to prepare an argument against the admissibility of the extraneous offense, no time to prepare a proper cross-examination, no time to investigate the allegations (reviewing lab reports,

37

photographs, etc.) and it was much too late to change trial strategy. The Court of Criminal Appeals has held that the Rule 404(b) notice provision has to be complied with or the proposed evidence is not admissible:

> The State, therefore argues that the Rule 404(b) notice provision is not a rule of evidence admissibility. We disagree. Rule 404(b) literally conditions the admissibility of other-crimes evidence on the State's compliance with the notice provision of Rule 404(b). See Rule 404(b) (other-crimes evidence may be admissible "provided that upon timely request by the accuseed in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction"); Roethel, 80 S.W. 3d at 281 (rejection claim that State's failure to comply with the notice provision similar to notice provision of Rule 404(b) does not automatically render such evidence inadmissible). This is not to say that a trial court is without discretion to utilize its powers (such as granting a continuances to reduce surprise) to permit the State to bring itself in compliance with the notice provision of Rule 404(b). But, a trial court must use these powers to ensure compliance and not to excuse noncompliance. Since the notice requirement of Rule 404(b) is a rule of evidence admissibility then it is error to admit Rule 404(b) evidence when the State has not complied with the notice provision of Rule 404(b).

*Hernandez v. State*, 176 S.W.3d 821 (Tex. Crim. App. 2005).For all of the reasons stated above, the State violated Rule 404(b) and the trial court erred in allowing the admission into evidence of the extraneous offense.

Appellee also contends that trial court erred in allowing the admission of the evidence of the alleged extraneous offense because it was not proven to the trial

court beyond a reasonable doubt.

On the morning of the third and last day of guilt/innocence, the prosecutor right before the testimony was to start filed a bench brief and ask the court to admit evidence of the extraneous offense. In its bench brief, the State made the following statement:

> When the North Texas Regional Drug Task Force executed a search warrant at the Defendant's residence of 823 Rathgeber on July 1, 2004 officers located a meth lab in the Defendant's trailer. The Defendant was also present on the property. The Defendant signed a judicial confession, admitting that he possessed 4 grams or more but less than 200 grams of methamphetamine that came out of the lab on his property.

(C.R. 1:81-92)

This statement is completely false as will be shown below.

In the bench brief, the State stated as follows:

> The similarities between the 2004 event and this event are compelling; an active meth lab, at the same residence, with the defendant present when the search warrant is executed.

(C.R. 1:81-92)

This statement is also false as will be shown below.

During his argument to the Court, the prosecutor told the Court the following:

> The testimony that I would proffer, I've attached Bobby Dilbeck's report. In July of 2004, the North Texas Regional Drug Task Force executed a search warrant at the same residence, 823 Rathgeber. The

39

Defendant was present.   There was an active meth lab in that trailer...

R.R. 6:11-12) The prosecutor further told the Court the following:

> The similarities between the 2004 event and this event is almost identical except the meth lab is in the trailer not the shop. But otherwise, it's his residence, same place, he's present when the search warrant is executed, and all of these acutrements of a meth lab are found right there.

(R.R. 6: 14)

Dilbeck was allowed to testify and upon cross-examination it was shown that there was no active methamphetamine lab present, all the 'acutrements" were not there and that methamphetamine could not have been manufactured with what was found. (R.R. 6:21-33) On these issues, Dilbeck testified as follows:

> Q.    Okay.   You didn't find----anhydrous ammonia is one of the key components, is it not?
>
> A.    Yes, sir.
>
> Q.    There was no anhydrous ammonia there, was there?
> A.    We didn't find any.   No sir.
>
> Q.    There's no lithium batteries or lithium battery things, were there/
>
> A.     Not that I recall
>
> Q.    There was no hydrosulfur----no sulfuric acid type materials or cans where you can get the sulfuric acid or the salt?
>
> A.    No, sir.

Q.     The ether can be used for other things, correct?

A.     Yes, sir. Everything used to make methamphetamine can be used for a legitimate purpose.

(R.R. 6:28-29)

He further testified as follows:

Q.     I don't see anything that can be used for—that you found any containers used for a generator; is that correct?

A.     I don't recall finding any. No, sir.

(R.R. 6:30)

Q.     And there was no smell of any chemical odor when you got there, was there?

A.     No, sir not that I can recall.

(R.R. 6:31)

To start the manufacturing process, you have to have pseudoephedrine, lithium (typically from batteries) and anhydrous ammonia. This process of manufacturing methamphetamine was discussed with the State's chemist the day before:

Q.     Would it be fair to start the meth cook you have to have pseudoephedrine and anhydrous ammonia and lithium of some type and maybe lithium batteries or some other source to create the chemical reaction you need?

A.     Yes, sir.

41

Q. Okay. And those three things when combined together will, in fact, make a chemical reaction, will they not?

A. Correct. Yes.

Q. Okay. And then----well, I'm having a hard time here. Anyway, after that do they—do they add ether to it of some type?

A. Generally yes.

Q. Okay. And does that make----

A. Some solvent.

Q. Huh, I'm sorry?

A. Some solvent.

Q. Could be ether, could be something else.

A. Yes, sir, it could be.

Q. Okay. And does that make the liquid meth? Is it liquid meth here at this point?

A. It depends of what you're talking about.

Q. Okay.
Q. Well, what—is it a gas, is it a solid, or is it a liquid?

A. It's in solvent so it would be liquid.

Q. Okay. So it's a liquid here–

A. Yes.

Q. —and then it stays a liquid here.

A. Correct.

Q. And then it has to be powdered, is that right, at some point?

A. Yes, sir. That's right.

Q. Okay. And to powder it, you need to create a gas; is that correct?

A. Correct

Q. Can you tell us what kind of gas?

A. It's hydrogen chloride

Q. Okay.

A. – or HCL

Q. And then you bubble that gas into this liquid solution and then it will powder out into this solid-type methamphetamine. Correct?

A. Yes, sir. It converts the base form of the methamphetamine to the solid form.

(R.R. 5:38-40)

Karl King, the lead investigator on the case, also testified in great detail about the process of manufacturing methamphetamine. (R.R. 6:68-70; 75-76; 80; 88) King testified that you have to have pseudoephedrine, anhydrous ammonia and lithium to start to make methamphetamine. (R.R. 6:68-70; 75-76; 80; 88) Those

43

three chemically react.(R.R. 6:68-70; 75-76; 80; 88) You take the reaction material and add either ether (obtained from starter fluid) or Coleman fuel. (R.R. 6:68-70; 75-76; 80; 88)   A solid substance goes to the bottom and the "meth oil" rises to the top.   (R.R. 6:68-70; 75-76; 80; 88) You then have to have a filter and you filter the "meth oil" from the solid substance (which is often called the bones). (R.R. 6:68-70; 75-76; 80; 88) To do so, you have to have a filter to drain it and usually coffee filters are used to catch the solid substance (bones).   (R.R. 6:68-70; 75-76; 80; 88) You then have to create HCL gas by mixing salt and sulfuric acid (obtained from drain cleaner) in a "generator" which is usually a plastic gas can or coke bottle.(R.R. 6:68-70; 75-76; 80; 88) You put tubing into the generator and pump the gas into the "meth oil" and it powders.(R.R. 6:68-70; 75-76; 80; 88) There is a distinct chemical smell throughout all the process. (R.R. 6:70)

Dilbeck did not find any of the necessary three ingredients to start the manufacturing process:

1.    Pseudoephedrine powder or pills;
2.    Lithium;
3.    Anhydrous ammonia.

(R.R. 6:23-32)

Further, he did not find anything to powder with;

1.    No salt;

44

2.     No drain fluid or any type of sulfuric acid;
3.     Or a generator (container).

(R.R. 6: 23-32)

He did not find anything to filter the liquid from the solid or any coffee filters. (R.R. 6:23-32) There was no chemical odor associated with the manufacturing process. (R.R. 6:23-32)

What did Dilbeck find?

1.     Powder methamphetamine;
2.     Tubing;
3.     Ether (starter fluid); and
4.     Empty blister packs.

(R.R. 6:23-32)

Dilbeck admitted that his alleged confidential informant never told him that Appellee was manufacturing methamphetamine (R.R. 6:31) Appellee was not arrested for manufacturing (See Dilbeck's report), was not indicted for manufacturing or convicted of manufacturing (C.R. 1:81-91; R.R. 6:30-31). Interestingly, counsel reviewed Dilbeck's report for the purposes of this appeal and noted that Appellee was arrested for Possession of Certain Chemicals (Pseudoephedrine) with Intent to Manufacture (C.R. 1:81-91) He was also arrested for possession of less than a gram of methamphetamine. (C.R. 1:81-91) Attached

as Exhibit 1 to Appellant's brief at the Court of Appeals was a dismissal showing that the Possession of Certain Chemicals (Pseudoephedrine) with Intent to Manufacture was "no billed" by the grand jury. The request to dismiss the charge was signed by the very prosecutor in this case. In his report, Dilbeck claimed he found 18.5 grams of crushed pseudoephedrine tablets and under 1 gram of methamphetamine (C.R. 1:88-91) Although Appellee was arrested for possession of less than a gram of methamphetamine, he subsequently, plead to possession over 4 grams and under 200 grams of methamphetamine. (States Exhibit 53; R.R. 6:101-102) After the trial, Appellee told his counsel that the alleged pseudoephedrine powder (18.5 grams) was tested at the lab and found to be methamphetamine and not pseudoephedrine and that is why the possession of methamphetamine rose from a state jail felony amount (less than 1 gram) and became over 4 grams and under 200 grams. Since counsel had no notice hat this "extraneous" was going to be used, he had never seen the lab report or investigated into the Possession of Chemicals with Intent to Manufacture. (R.R. 6:9-21) However, it was clear that the State could not prove Possession of Certain Chemicals with Intent to Manufacture after the substances were test at the lab was performed and according, the prosecutor recommended a no bill to the grand jury. In short, the prosecutor who recommended the no bill for possession of pseudoephedrine with intent to

manufacture, advised the trial court that there was an active meth lab with every component part present. (R.R. 6:9-21)This was not a hard blow, but a foul one.

The State could not prove manufacturing because none of the there starting ingredients was present (pseudoephedrine powder, lithium and anhydrous ammonia). (R.R. 6:23-33)

The question of the appropriate standard of admissibility for extraneous acts evidence was resolved in *Harrell v. State*, 884 S.W.2d 154, 157-161 (Tex. Crim. App. 1994) There, the court relying in part on the instruction to the jury as to its consideration of such evidence, held that the trial judge must be satisfied that the jury could find beyond a reasonable doubt that the defendant committed the extraneous offense. *Harrell*, at 157-161. The alleged "extraneous" should never have been heard by the jury. None of the three necessary starting ingredients were present.(R.R. 6:23-32; R.R. 6:68-70; 75-76; 80; 88) There was no generator and none of the chemicals required to create the HCL gas necessary to "powder" the meth oil were found. (R.R. 6:23-32; R.R. 6:68-70; 75-76; 80; 88) No filter or coffee filters were found.(R.R. 6:23-32; R.R. 6:68-70; 75-76; 80; 88). It is clear that the State could not prove beyond a reasonable doubt that Appellee committed the offense of Manufacturing of a Controlled Substance. One of the problems with the failure to give notice is that Defendants do not have time to investigate into

47

uncharged conduct and prepare a proper objection to the trial court to prevent its

admission. The following statement is instructive:

> Of course, even where the other act which the state proposes to offer in evidence was a the subject of a conviction adequate notice may have another benefit. It not only permits the accused to prepare a possible objection based on Rules 404(b) and 403 but it may be important in allowing the trial judge adequate time to reflect and rule on such objections.

Goode, Wellborn and Sharlot, *Texas Practice Guide to the Rules of Evidence Section* 404.6.5 (Volume 1-3[RD] Edition, 2002).

Here counsel did not have time to investigate into an allegation that Appellee

had never been arrested for, did not have to time to prepare a proper objection and

did not have time to provide the Court with pertinent case law. The trial court

abused its discretion in allowing the alleged extraneous offense into evidence

because the State could not and did not prove the extraneous beyond a reasonable

doubt.

**II.     The trial court agreed with the prosecutor that the alleged extraneous offense was true rebuttal evidence and therefore the State was not required to comply with Rule 404(b) or the pre-trial order.**

The trial court never reached the issue as to whether the State willful violated

the Court's pre-trial order because the trial court believed that this was "rebuttal

evidence" and as a result, the State did not have to give any notice of its intent to

offer this evidence. (R.R. 6:9-22) Since the Court did not believe the State had to give notice, it did not find any violation of the pre-trial order. Accordingly, never made any finding that the prosecutor did not "willfully" violate the pre-trial order.

During the hearing on whether the alleged extraneous offense was admissible, the prosecutor never told the Court that he was surprise by the defensive theory of the case. (R.R. 6:9-22) He never told the Court he had no intention of offering the extraneous offense into evidence during his case-in-chief, but was forced to because of the defense's opening statement. (R.R.6:9-22) The prosecutor knew that the defendant had given an audio and video statement to the first officer on the scene because he produced same at the pre-trial hearing (R.R. 2:4-7) The fact that the Defendant told Officer Whitfield that he had just arrived on the scene a few minutes before she did was in her report. (R.R. 5:57-66) The prosecutor knew that none of his witnesses could testify how long the Defendant had been on the premises prior to the arrival at the scene. (R.R. 5:61, 5:108, 6:77-78) The prosecutor had Officer Dilbeck listed as a witness on his witness list but did not have his reports in the State's file. This prosecutor had signed the dismissal of the case (Possession of Certain Chemicals with Intent to Manufacture) when the Defendant was arrested years earlier. (Exhibit 1 to Appellant's brief with the Court of Appeals) If he interviewed Officer Dilbeck, he knew that none of the three essential ingredients to

49

manufacture methamphetamine were not present at the time of his arrest. (R.R. 6:21-23) If he interviewed Officer Dilbeck, he knew that there was no salt or sulfuric acid present to create the gas which is necessary to powder the liquid solution that is created during the process of manufacturing methamphetamine. (R.R. 21-23) Further, he misrepresented to the trial court that there was an "active meth lab" at that time. (C.R. 1:81-92; 6:9-22) He represented to the Court in his written proffer that this was a "circumstantial evidence" case and that this evidence was "essential" to defeat the defensive theory. (C.R. 1:81-92) The prosecutor knew that by bringing up on the last day of the guilt/innocence phase of the trial that the defense would not be able to investigate into the facts of that case.

What competent prosecutor would not want to offer this evidence during its case-in-chief in a circumstantial evidence case where none of the State's witnesses could testify how long the defendant had been on the premises? The prosecutor never informed the Court that he never intended to offer the facts surrounding the alleged extraneous offense into evidence. (R.R. 6:9-22) The prosecutor never told the Court that he did not know that the defense would be that the defendant was merely present at the scene of a crime because he had just arrived. (R.R. 6:9-22) The prosecutor never told the Court that he had made a mistake in failing to provide notice of this extraneous offense. (R.R. 6:9-22)The only argument that the State

50

made to the Court was that this was rebuttal evidence and that there was no requirement to give pre-trial notice of its intent to offer this alleged extraneous offense into evidence at the trial of this case. (R.R. 6:9-22) The Court of Appeals finding that the State had to provide notice of its intent to offer the alleged extraneous offense into evidence as correct and its finding that there was a willful violation was appropriate.

**III.    The Appellant was harmed by the admission of the extraneous offense.**

**HARM ANALYSIS**

Appellee contends there are three different harm standards that this honorable court must apply.

**1.    Harm standard for failure to give notice under Rule 404(b)**

This Court of Criminal Appeals also cleared up the harm standard when the Rule 404(b) notice provision has not been complied with as follows:

> The Rule 44.2(b) harm standard is whether the error in admitting the evidence "had a substantial and injurious effect or influence in determining the jury's verdict." See King v. State, 953 S.W.2d 266, 271 (Tex. Cr. App. 1997). The issue in cases like this is how to apply this standard. We find helpful the Austin Court of Appeals' discussion in Roethel, 80 S.W.3d at 281-282:
> Accordingly, we must assess harm from the violation [a notice provision similar to Rule 404(b)'s] against its intended purpose. Although the violation of the notice provision resulted in improper admission of evidence, we cannot employ the harm analysis used for

51

violations of the rules of evidence concerning relevancy because the purpose of those rules differs from the purpose of those rules differs from the purpose of the [Rule 404(b) notice provision]. The rules of evidence governing relevancy limit the use of evidence that may be unfairly prejudicial or misleading; for instance, evidence of other crimes, wrongs, or acts is admissible to prove the character of a person to show that the commission of the crime at issue is consistent with defendant's character, but is admissible for other purposes. When evidence of an extraneous offense is admitted to prove such character conformity, we examine the record to determine how the admission of this substantively inadmissible evidence effect the jury's verdict. That test is appropriate because the erroneous admission of the evidence thwarts the rule's purpose of shielding the jury from the evidence used for improper reasons. The notice requirement found in [Rule 404(b)], however, does not relate to substantive admissibility of the evidence. The lack of notice does not render the evidence inherently unreliable, but instead raises a question about procedure noncompliance. The purpose of the notice requirement is to enable the defendant to prepare to meed the extraneous offense evidence. Thus, we must analyze how the deficiency of the notice affected [the defendant's] ability to prepare for the evidence.

The Court in Hernandez said that the Rule 404(b) notice provision of preventing surprise is a valid consideration in conducting a Rule 44.2(b) harm analysis. *Hernandez*, at 825. However, the Court in Hernandez also made the following statement:

This is not to say that a trial court is without discretion to utilize its powers (such as granting a continuances to reduce surprise) to permit the State to bring itself in compliance with the notice provision of Rule 404(b). But, a trial court must use these powers to ensure compliance and not to excuse noncompliance.

Hernandez, at 824.

The Court in Hernandez also stated that it was necessary how the defense strategy may have been different if the State had provided the proper notice. *Hernandez*, at 826.

Appellee had timely (4 months prior to trial) requested notice from the State of extraneous offenses that it intended to offer in its case-in-chief. (C.R. 1:26-27) Appellee had obtained a pre-trial order that required the State to disclose any extraneous offenses that it intended to offer in its case-in-chief. (C.R. 1:28). Appellee was not arrested in 2004 for Manufacturing of a Controlled Substance (C.R. 1:87-91). Appellee was never indicted or convicted of Manufacturing of a Controlled Substance arising out of the events in 2004 (R.R. 6:30-31). The State did not advise Appellee's counsel or the Court that it intended to offer this evidence until the third and last day of the trial (C.R. 81-91: R.R. 6:23-32) Interestingly, the State did not interview Dilbeck about this alleged extraneous until after the close of testimony on the second day of the trial even though Dilbeck worked for the D.A.'s office. (R.R. 6:23-32) the State did not anticipate this evidence pre-trial, how could the defense? Dilbeck's report was not in the State's file. (R.R. 6:9-22) How could the defense have been more surprised? The Court of Criminal Appeals stated as follows in the *Hernandez* case:

Appellee is correct in asserting that "simply because the defendant knew about the extraneous acts does not mean he has been given notice of the state's intent to use the evidence...[or that] he is properly prepared to defend against them. A defendant who has asked for notice of what uncharged misconduct the State intends to use against him, may think, when the State fails to respond, that the prosecutor does not know of those prior pecadillos. Thus, he need not be prepared to defend against their use because the State is either unaware of .

*Hernandez*, at 825-826. Appellee's counsel had never seen Dilbeck's report, the lab report or any photographs associated with the events of 2004. (R.R. 6:9-22) Counsel had no reason to believe the State would try to suggest that Appellee was manufacturing methamphetamine in 2004. Further, a continuance on the last day of the guilt/innocence phase would have been the "excuse noncompliance" and not appropriate. Hernandez, at 824. Additionally, the trial court would not have granted a continuance. The State argued that it did not have to give notice because this was rebuttal evidence or alternatively, they gave notice pursuant to Rule 609 when the gave notice that the intended to impeach Defendant with his conviction for Possession of Methamphetamine over 4 grams. (R.R. 6:9-22) The trial court obviously believed that the State was correct in its assertions as he stated "All right. Mr. Gillespie, you may proceed with this proper evidence." (R.R. 6:21) The Court did not make any comment suggesting that it believed the State had violated Rule 404(b) at all. (R.R. 6:9-22) Accordingly, not only would a continuance have

54

excused noncompliance, it obviously would not have been granted.

After counsel was allowed to argue whether the extraneous should come into evidence (R.R. 6:9-22), the State's first witness before the jury was Dilbeck. (R.R. 6:23-32). Appellee's counsel had no time to prepare a proper cross-examination. Appellee counsel never got to look at the lab report (R.R. 6:9-22). Appellee's never got to look at any photographs that were taken of this alleged lab (R.R. 6:9-22) or inspect the seized components (R.R. 6:9-22). Appellee never got to investigate into the allegation at all. Only upon reviewing this matter for the purposes of appeal, did Appellee's counsel realize that the charge of Possession of Certain Chemicals with Intent to Manufactured was no billed. (See (Exhibit 1 to Appellant's brief at the Court of Appeals) to Appendix). Counsel did not get to cross-examine Dilbeck on those matters or present a certified copy of the dismissal to the jury. Counsel had no time to prepare a proper objection to the extraneous or find case law. If counsel had been given notice of this extraneous, counsel would have been able to thoroughly investigate this matter and strongly argue to the trial court that the State could not prove the extraneous offense beyond a reasonable doubt as discussed previously in this brief. Any experience trial lawyer knows that preparation is the key to trial work. A voir dire examination has to be thought through and prepared. An opening statement has to be thought through and prepared. So to, counsel has

55

to have time to prepare for a motion by the state to introduce extraneous offenses. Counsel would have requested that the admissibility of this extraneous be taken up at the pre-trial hearing on September 7, 2012. (R.R. 2:4-6) Alternatively, counsel would have been prepared to argue to the trial court that the State could not prove this matter beyond a reasonable doubt. In civil matters, counsel have three days to prepare for hearings and in criminal matters all motions must be filed seven days prior to the pre-trial. This is obviously done so counsel will not be caught off guard at those hearings and can properly prepare for same.

The Court in *Webb* stated that the Appellee had only one business day before trial to prepare for the cross-examination of this important witness and to make any necessary adjustments to trial strategy and accordingly the notice was not timely. *Webb*, at 178 In this, counsel had no time to prepare an argument against the admissibility of the extraneous offense, no time to prepare a proper cross-examination of "this important witness", no time to investigate the allegations (reviewing lab reports, photographs, etc.) and it was much too late to change trial strategy. Accordingly, Appellee requests that this honorable court reverse this matter and remand it for a new trial.

The State's own arguments in its trial brief and closing argument show how important the extraneous offense evidence was to their case. In its trial brief, the

State made the following statements to convince the trial court that the extraneous

offense should be admitted:

**7)** **Due to the defensive theory of mistake/accident combined with the circumstantial nature of the case and the similarities between the prior meth lab at defendant's residence and this lab, the probative value of the 2004 offense outweighs any prejudicial effect.**

First, defense counsel has aggressively advanced the theory that his client is "living a nightmare" of a confluence of unfortunate events that make him look guilty. So, he has clearly advanced a theory of mistake/accident. Second, the 2004 meth lab at the same residence when the defendant was also present **obliterates any claim of accident** under Professor Wigmore's "Doctrine of Chances." The similarities between the 2004 event and this event are compelling: an active meth lab, at the same residence, with the defendant present when the search warrant is executed. Third, there is no remoteness rule for extraneous evidence offered to rebut a defensive theory. See Prince v. State, 192 S.W.3d 49 (Tex. App.-Houston [14th Dist.] 2006, pet ref'd)(permitting admission of ten-year-old extraneous offenses because there is no remoteness rule and because the focus is on the similarities between the extraneous offense and the instant offense in determining probative value). **Fourth, this is a circumstantial case of party liability**. There is no confession by the defendant. **And, the defense, through its theory of mistake, has advanced innocent explanations for the evidence tying the defendant to the lab: the smell of ether on his clothes, the existence of the lab on his property, and the baggies of meth in his bedroom**. Therefore, **this evidence is essential to the State to rebut the defensive theory of accident/mistake.** Thus, the probative value of this highly similar evidence of a prior meth lab at the defendant's residence when the defendant was present outweighs any risk of unfair

57

prejudice.

(C.R. 1:86)

The State in its written memorandum to the trial court said the evidence was "essential" to

rebut the defensive theory of accident/mistake.   Yet, now the State claims that there

was overwhelming evidence of the Defendant's guilt.

Also, in closing argument the prosecutor strongly argued that the extraneous

proved that Appellee was manufacturing on this occasion:

> He wants you to think this his client is Harrison Ford from the fugitive, but there's this confluence of unfortunate events that frame him.   But, ladies and gentlemen, common sense says its' not an accident if it happens twice.   That's why we were able to bring you the 2004 incident and you got to hear the testimony from Bobby Dilbeck, and you got to see the Defendant's Judicial Confession.   And you got to hear when they got called out by the CI. CI told the North Texas Drug Task Force that Mr. Dabney was selling meth out of his trailer.   They execute a warrant on the property.   He's present.   They have all the accoutrement for a meth lab, all the items, pseudoephedrine, the various items plus they have meth. You can see his judicial confession.   You get to consider that because the law----it's the Doctrine of Chances. Something bad might happen to you once that's an accident, but if it happens twice, it's not an accident.   It's not a mistake.   And, ladies and gentlemen, that's important evidence that rebuts their defensive theory.

> Mr. Barber used this movie theme, that this is a movie and his client is trapped in a movie where he's trying to–he's an innocent person through this unfortunate set of circumstances, he's framed.   If this is a movie, ladies and gentlemen, it's a sequel.   If this is a movie, ladies

58

and gentlemen, it would be titled Meth Lab at Ronnie's Part 2. This time they move it to the shed. It's happened twice. That rebuts their defensive theory. It's not an accident, it's not a mistake. He knew what he was doing.

Making meth is a team sport, we talked about that. Party Liability. You all gave me your word that you could apply the law of party liability in a case. You told me it was a fair law and that you could apply it and I'm holding you to your law–to your word. If you solicit, encourage, direct, aid or attempt to aid.
You can't make meth without a location. He has the perfect location

in that shed in that property out in the country. He let them use his

property.

(R.R. 7:37-39)

All of the State's witnesses who testified on the issue admitted that another man was the actual cook and had already been convicted for that offense. (R.R. 5:6-16; R.R.6:91) Additionally, the none of the State's witness could testify how long Appellee had been present at the scene prior to the arrival of the first officer. (R.R. 5:61, 5:108; 6:77-78) Appellee's defense was that he had just arrived home and did not know what was going on at his property. (R.R. 6:103-114) It is clear that the wrongful admission of this alleged extraneous that was not and cannot be proven beyond a reasonable doubt was not harmless error.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons herein and upon the authority herein the Appellee, Ronnie

59

Leon Dabney, requests that this Court would affirm the ruling of the Court of Appeals.

Respectfully submitted,

Mark H. Barber
900 8th Street, Suite 116
Wichita Falls, TX 76301
Tel. 940-761-3009
Fax 940-761-4060

*/s/Mark H. Barber*_____
Mark H. Barber
State Bar No. 01708050

## CERTIFICATE OF SERVICE

On the 15th day of June, 2015, a copy of the foregoing document was served upon opposing counsel.

*/s/Mark H. Barber*_____
Mark H. Barber

## CERTIFICATE OF COMPLIANCE

Counsel certifies that his computer count says there are 13,851 words in this brief.

*/s/Mark H. Barber*_____
Mark H. Barber
